# Richmond

## LORENZO BOXLEY T/A L.W. BOXLEY & SON AND SHELBY MUTUAL INSURANCE COMPANY V. PATRICK ONORATO

April 21, 1978.

Record No. 770997.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Albert D. Bugg, Jr. (Frank B. Miller, III; Sands, Anderson & Marks,* on brief) for appellants.

*Frank C. Maloney, III (Maloney, Yeatts, Balfour, Ayers & Barr,* on brief) for appellee.

I'ANSON, C.J., delivered the opinion of the Court.

The claimant, Patrick Onorato, an employee of Lorenzo Boxley t/a L. W. Boxley & Son, sustained an injury by accident arising out of and in the course of his employment on August 6, 1974. The claimant received benefits in accordance with a memorandum of agreement from August 14, 1974 until October 6, 1974. When the claimant was unable to return to work, the benefits were continued pursuant to supplemental agreements of January 8, 1975 and March 20, 1975 based on reports of Dr. William E. Daner and Dr. R. D. Butterworth, which showed that a dormant arthritic condition had been aggravated by claimant's work-related injury.

Dr. Butterworth continued his treatment of claimant until

July 30, 1975. The patient was then referred by Dr. Butterworth to Dr. George W. Johnson, a neurologist.

Dr. Johnson examined claimant on August 15, 1975. In Dr. Johnson's report of August 18, 1975 to Dr. Butterworth, he stated that claimant has a severe degenerative arthritis of the spine and the neck area, and that the pain in the neck area may conform to a progressing disease problem the patient had when he [Dr. Johnson] operated on him some five years before. The cause of the pain in the back was difficult to evaluate, and he recommended further evaluation by myelography to determine the severity and extent of the disease.

On September 8, 1975, the insurance carrier filed with the Commission an application alleging a change in condition in that claimant's present incapacity was not the result of the accident but of a pre-existing condition.

The carrier's application came on to be heard before Deputy Commissioner Hiner, and leave was granted to file the deposition of Dr. Johnson taken on October 28, 1975, which was several days before the hearing. Dr. Johnson concluded in his deposition by stating the following:

"I think it is possible that either the natural, disease process or the accident could have been causing this man the back pain, but it is more probable that the problem that I saw him for in August of 1975 was related to advancing degenerative arthritis of the spine."

Based on Dr. Johnson's deposition and his letter of August 18, 1975, Deputy Commissioner Hiner found that the carrier had borne the requisite burden of proving a change in condition. The outstanding award was terminated as of November 3, 1975, but the carrier was directed to continue to provide medical attention occasioned by the August 6, 1974 accident for so long as it was necessary. These findings were affirmed by the full Commission.

Thereafter, Dr. Johnson continued his treatment of the claimant. On March 3, 1976, Dr. Johnson advised the claim adjuster for the insurance carrier that the claimant "is continuing to have a great deal of pain and disability," and he was recommending that the claimant be admitted to the hospital in order that he may reevaluate the situation and "include repeat myelography."

Claimant's counsel wrote the Commission on March 31, 1976 requesting a hearing to determine whether claimant was entitled to "medical and other benefits under the Workmen's Compensation law."

On August 23, 1976, Dr. Johnson advised the attorney for the carrier that the accident of August 6, 1974 may well have precipitated further pain for the claimant; however, the pre-existing condition more than likely would have continued to give him difficulty. If he was unable to return to work, it would be more likely related to advancing degenerative arthritis of the spine than to the automobile accident.

Thereafter, a hearing was held on October 26, 1976 pursuant to claimant's request. Deputy Commissioner Joyner then suggested that Dr. Johnson be asked to file a more definitive report regarding the causation of claimant's problems.

On November 9, 1976, Dr. Johnson wrote that the claimant has had recurrent pain problems, both in his "neck, shoulder and arm area on the left, as well as the low back and leg pain." He further stated that

"[a]lthough there was a pre-existing condition and more than likely this would have led to trouble in the future, the fact still remains that the accident did precipitate complaints from this pre-existing condition.

"The pain that he is having now is a combination of two things. One, the degenerative arthritis and two, a traumatic event which aggravated the pre-existing condition and is adding to his present pain problem."

As the result of Dr. Johnson's letter of November 9, claimant asked that the hearing on his claim be resumed. Subsequently, Commissioner Joyner wrote Dr. Johnson requesting that he answer the following question: "Would the claimant be disabled now as a result of the natural progression of his arthritic condition had he not suffered the effects of his industrial accident of August 6, 1974?"

Dr. Johnson responded to Commissioner Joyner's request as follows:

"I have reviewed his situation again, including a discussion with him in the office on the last occasion. This patient, apparently, prior to the accident described on August 6, 1974,

was functioning reasonably well. At that point and prior to that accident, one would have expected the patient to be only intermittently disturbed by the degenerative arthritis of the spine. After that period of time it would have been unlikely that he would suddenly have worsened to the point that he was disabled as the result of his disease. In other words, the disabling process should have taken another 10 to 15 years at least. Therefore, I can only conclude that the accident of August 6, 1974 somehow accelerated this process and led to his disability in a premature state."

Commissioner Joyner then found that the claimant had carried the requisite burden of proof in establishing that his present disability was causally related to his industrial accident and awarded him compensation for total disability. These findings were affirmed by the full Commission.

Appellants contend (1) that Onorato's claim is barred by the provisions of Code § 65.1-87, which require the application for compensation to be filed within one year after the accident; (2) that claimant's application is barred by Code § 65.1-99, which provides that no review of an application on the ground of change in condition shall be made after twelve months from the last day for which compensation was paid; and (3) that the evidence before the Commission does not reflect a change in condition in claimant's physical condition but only a change in Dr. Johnson's opinion regarding the causation of claimant's problems.

In support of the contention that the claim is barred by Code § 65.1-87, the appellants argue that the original memorandum of agreement specified only a fractured rib, contusion of the left shoulder, and a sprained right knee; and that the supplemental memorandums of agreement of January 8, 1975 and March 20, 1975 do not enlarge the description of complainant's injuries to include the injuries to claimant's neck and back for which he seeks additional compensation on this application.

We do not agree with the argument that the supplemental agreement of March 20, 1975 does not enlarge the description of claimant's injuries to include back and neck pains. The record shows that the supplemental agreement of March 20, 1975, which was prepared by the insurance carrier and approved by

the Commission, makes reference to the reports of Dr. Daner filed on December 27, 1974 and Dr. Butterworth's report dated March 6, 1975. Moreover, the carrier was advised of the back and neck pains within six months of the accident by Dr. Daner and subsequently through the reports of Dr. Butterworth which resulted in extending the payments of compensation.

The appellants' reliance on *Shawley* v. *Shea-Ball Const. Co.*, 216 Va. 442, 219 S.E.2d 849 (1975), is misplaced. There, neither the Commission nor the carrier were notified within one year after the accident of the additional injuries suffered but not claimed in the original application, and we held that the claim was barred by the provisions of Code § 65.1-87.

■ The appellants next contend that claimant's application was barred under the provisions of Code § 65.1-99. They argue that claimant's attorney's letter of March 31, 1976 was filed with the Commission for a hearing to determine only if claimant was entitled to medical benefits.

The application of March 31, 1976 stated that the application for a hearing was to determine if claimant was entitled "to medical and other benefits under the Workmen's Compensation law." It was filed approximately one month after Dr. Johnson's report to the carrier that claimant was still having a great deal of pain and disability and approximately five months following the termination of temporary, total disability benefits. Moreover, the correspondence between appellants' counsel, the Commission, and Dr. Johnson, and the reports furnished counsel by Dr. Johnson, fully informed the carrier of the nature of Onorato's claim.

We agree with the Commission's finding that claimant's application was sufficient; that it was filed within twelve months from the date claimant last received compensation; and that the claim was not barred under Code § 65.1-99.

■ The crucial question presented by appellants' final contention is whether the evidence before the Commission reflects a change in claimant's physical condition or only a mere change in Dr. Johnson's opinion regarding the causation of claimant's problems.

Appellants argue that the answer to the question is found in *Jones Construction Co.* v. *Martin*, 198 Va. 370, 94 S.E.2d 202 (1956); and that our holding there is controlling here.

In *Jones*, the treating physician reported to the insurance carrier that claimant had had a good recovery from his operation; and that he had "fully recovered and was advised to return to work." Subsequently, the physician changed his mind and advised the carrier that claimant could only perform light work. In a subsequent report to the carrier, the physician stated that the claimant was not then and would never be able to do the type of work he did before his injury. There was no indication in any of the attending physician's reports that there had been a change in claimant's physical condition.

We said, in reversing the award, that "[a] change in condition means an actual change in the condition of the injured employee and not a mere change in the opinion of the medical expert . . . ." 198 Va. at 375, 94 S.E.2d at 206.

*Jones* is clearly distinguishable from the present case. Here, Dr. Johnson explained in his deposition of October 1975 that claimant's pre-existing degenerative arthritis would cause him to "have intermittent difficulty, off and on from time to time" which could be treated with "some medication . . . maybe a day or two, and some hot showers, and they do pretty good." However, Dr. Johnson continued to examine and treat the claimant during the months which followed and recognized that his patient was continuing "to have a great deal of pain and disability" and not "purely a flare up in his problem which would have subsequently subsided." It was then that Dr. Johnson concluded the injury received in the industrial accident had aggravated his pre-existing arthritis because claimant's disabling condition had worsened more rapidly than ordinarily expected from the degenerative arthritic condition; and "that the accident of August 6, 1974 somehow accelerated this process and led to his disability in a premature state."

The medical evidence in the present case established a change in claimant's physical condition which manifested its presence and became detectable by Dr. Johnson through a process of developments occurring subsequent to the termination of compensation in November 1975. Hence, the evidence showed a change in claimant's physical condition rather than a mere change in Dr. Johnson's opinion.

We hold that the evidence supports the Commission's findings that claimant carried the burden of establishing a change in his

938

physical condition; that his present disability was causally related to the industrial accident; and that the claimant was entitled to compensation for total disability.

*Affirmed.*