COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Elder, Frank and Petty
Argued at Salem, Virginia


TYCO ELECTRONICS AND INSURANCE COMPANY
  OF THE STATE OF PENNSYLVANIA
                                                        OPINION BY
v.       Record No. 2148-12-3                 JUDGE ROBERT P. FRANK
                                                        JUNE 18, 2013
TONY ALVIN VANPELT


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

           Andrew M. Alexander (Semmes, Bowen, & Semmes, P.C., on
           briefs), for appellants.

           John B. Krall (Ritchie Law Firm, PLC, on brief), for appellee.


        Tyco Electronics and Insurance Company of the State of Pennsylvania, its insurer,

(collectively referred to as employer) appeal the decision of the Workers' Compensation

Commission (commission) which awarded Tony Alvin VanPelt (claimant) wage compensation

and medical benefits for a neck and upper back work-related injury.  Employer assigns error to

the commission's failure to make rulings on its defenses of abandonment and *res judicata*, by

failing to apply the statute of limitations, and in making a *de facto* award.  For the reasons stated,

we affirm the decision of the commission.

                                    BACKGROUND

        On appeal from the commission, we view the evidence in the light most favorable to

claimant, the party prevailing below.  Tomes v. James City Fire, 39 Va. App. 424, 429-30, 573

S.E.2d 312, 315 (2002) (citing R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390

S.E.2d 788, 788 (1990)).

Claimant suffered a work-related, compensable injury on October 26, 2000. He informed Nurse Lehman that he injured his left shoulder, upper back, and neck. The nurse completed the employer's accident report, noting claimant's injury to his left shoulder, upper back, and neck. Claimant was examined by Dr. Phillips on November 2, 2000. Claimant complained of tightness in his neck and pain in his upper back. On November 7, 2000, Dr. Phillips diagnosed claimant with upper back and neck strain. On November 14, 2000, the doctor recommended an MRI for claimant's cervical spine.

On November 22, 2000, Dr. Bell diagnosed claimant with a herniated disc with resulting cord compression causing radiculopathy. Dr. Phillips referred claimant to a neurosurgeon.

On December 11, 2000, claimant continued to complain of shoulder tenderness and limited range of motion of his left arm. Dr. Bell diagnosed claimant as having neck and shoulder injuries and affirmed the plan for claimant to see a neurosurgeon.

Dr. Shaffrey, a neurosurgeon, examined claimant on December 13, 2000 and after reviewing the MRI, recommended surgery.

On January 2, 2001, claimant was diagnosed by Dr. Chappell with a small to moderate tear of the shoulder tendon and spinal stenosis with cord compression, which appeared primarily due to herniated disc material. Dr. Chappell recommended rotator cuff repair for the right shoulder. On March 15, 2001, claimant underwent the recommended procedure. The record indicates the shoulder injury was resolved by October 1, 2001.

On May 30, 2001, prior to filing his claim for benefits, claimant underwent cervical spine surgery. He had three more cervical surgeries between May 2002 and January 2006. Employer paid for all of the neck surgeries, hospital bills, and all other medical bills related to the cervical injury, including over 50 visits to a pain management clinic, as well as physical therapy. A representative of employer attended the majority of claimant's medical appointments.

On June 29, 2001, claimant advised Dr. Chappell that he continued to experience pain in his shoulder and that his range of motion was unchanged since May 29, 2001. On October 1, 2001, Dr. Chappell determined that claimant had reached maximum medical improvement, giving claimant a 4% permanent impairment of the left upper extremity. Chappell released claimant to work without restrictions. On November 19, 2001, claimant reported to Dr. Chappell that he had increased pain in his left shoulder and still had pain in his neck.

Claimant filed a claim for benefits on March 20, 2002. The claim alleged that on October 26, 2000, he sustained injuries to his left shoulder and neck. Claimant sought lifetime medical benefits. The parties settled the claim and submitted an agreement to pay benefits, listing only his left shoulder injury. The parties agreed that claimant was entitled to wage loss benefits beginning March 15, 2001. On April 3, 2002, the commission approved the agreement, ordering employer to pay wage loss benefits and medical benefits.

On April 15, 2002, the parties submitted a termination of wage loss award form, terminating the award of temporary total disability benefits based on claimant's return to work on April 12, 2001. The form indicated that wage loss benefits had been paid through September 30, 2001, based on claimant's return to work without restrictions on October 1, 2001.

A supplemental award order, dated April 23, 2002, noted the payment of wage loss benefits from May 23, 2001 through September 30, 2001.

On the same date, the parties submitted a supplemental agreement to pay benefits, providing for payment of temporary total disability benefits beginning May 23, 2001, and a termination of wage loss award form, terminating benefits based on claimant's return to work on October 1, 2001. The commission approved the supplemental agreement on April 23, 2002. The section of the agreement titled "Nature of injury/illness (incl. body parts)" was left blank.

Employer paid wage loss benefits and medical benefits for claimant's cervical spine injury through July 5, 2010 at the same weekly rate as originally ordered. On July 2, 2010, employer sought to terminate the weekly wage benefits. Employer asserted claimant was released to full duty work on June 10, 2010, citing a report by Dr. Ross, a specialist in disability evaluation. Dr. Ross had not treated claimant. Ross merely reviewed claimant's medical history and concluded claimant's left shoulder symptoms had resolved years earlier, opining: "[t]he shoulder has been a closed topic in the medical records for years."

Dr. Ross cited Dr. Chappell's conclusion that claimant was capable of returning to work without restrictions in regard to the left shoulder as of October 2, 2001. Dr. Ross opined that claimant continued to have an unrestricted capacity to work, relative to the shoulder. According to Ross, claimant's shoulder had no impairment or long-term disability, other than that which was mandated by the impairment rating, resulting from surgical intervention. Ross also concluded that "[n]o further diagnostic testing, medical evaluations or treatment is needed in regard to the left shoulder." Dr. Ross gave no opinion as to any disability caused by claimant's neck injury.

Claimant filed a claim on December 22, 2010, seeking payment of medical expenses and temporary total disability benefits from October 1, 2001 and continuing. He listed as injured body parts his left shoulder, upper back, and neck. Employer denied that claim, asserting that claimant had abandoned the neck injury claim and that the claim was barred by the statute of limitations, laches, and *res judicata*. Claimant argued he should be granted a *de facto* award.

The matter was heard before a deputy commissioner. Deputy Commissioner Culbreth concluded that claimant had not abandoned his claim regarding his neck injury. Culbreth also found that the claim was not barred by the statute of limitations, laches or *res judicata*. The deputy concluded:

The claimant has consistently complained of neck pain, filed claims relating to his neck pain, sought and received treatment for his ongoing neck pain and had that treatment paid – over a 10-year period – by the carrier. Although the defendants argue against a *de facto* award because there is a disagreement over the "nature" of the claimant's injury, this [dis]agreement is only recent. Rather, for 10 years, based upon the claim forms submitted, and agreements entered, the claimant has relied on the employer's continued payment, without objection, for treatment of his neck and upper back and for related disability benefits. A *de facto* award, in such a case, is entirely appropriate. To block further treatment by asserting that the claimant has somehow "slept on his rights" would be manifestly unjust.

The deputy commissioner modified claimant's prior award to include the injury to his neck and upper back. The deputy commissioner noted that no award for any ongoing benefits would be entered without the submission of proper documentation of the disability. Medical benefits were ordered to be continued.

Employer appealed to the full commission, which affirmed the award.

On appeal to the commission, employer argued that claimant abandoned his claim for a neck injury and that the statute of limitations barred any claim for a neck or upper back injury. Employer also asserted that the voluntary payment of medical expenses cannot give rise to a *de facto* award and that the doctrine of *res judicata* barred a claim for a neck injury.

The commission made a number of factual findings. While the supplemental agreement did not mention the nature of claimant's injury, the agreement covered the period of disability related to claimant's first neck surgery which occurred on May 30, 2001. The commission also found the employer paid for that surgery and other surgeries and treatments associated with claimant's neck.

The commission concluded that, based on reasonable inferences, the supplemental agreement intended to cover the neck injury. Having found the supplemental agreement was filed within two years of claimant's injury, the statute of limitations was not a bar to recovery.

The commission then addressed the *de facto* award, finding that employer for many years paid disability and medical benefits for claimant's neck injury,[1] that the supplemental agreement implicitly covered the neck injury, and that employer offered no facts even to suggest that claimant's neck and upper back injuries were not compensable or that there was some other basis upon which employer did not agree to an award for the neck injury. The commission found that any dispute was not made in good faith, for the purpose of a *de facto* award. The commission noted that because the nature of the injury was ambiguous, it considered extrinsic evidence, including that the period of disability awarded by the supplemental agreement corresponded with the date of claimant's first neck surgery. Furthermore, the employer accepted responsibility both for the cost of the surgery and the resulting disability. Therefore, the commission concluded, the award necessarily included the neck.

The commission did not address employer's abandonment and *res judicata* defenses. Subsequent to the review opinion, employer filed a motion to reconsider, asking the commission to rule on these two defenses. By order of November 20, 2012, the commission denied the motion, holding that "[g]iven the commission's finding that a timely award was entered for the claimant's neck and upper back, we do not need to reach the employer's defenses of abandonment and *res judicata*."

This appeal follows.

---

[1] In its brief, employer conceded it voluntarily paid wage benefits and medical treatments for claimant's cervical spine through July 2010. In his testimony before the deputy commissioner, claimant acknowledged he signed a termination form to terminate his benefits effective the date he recovered from shoulder surgery. While the law "cannot be subordinated to the private opinions of litigants[,] [a]n entirely different paradigm . . . applies to questions of fact unique to the litigants and specific to the circumstances of each particular case . . . '[a] party can concede the facts but cannot concede the law.'" Logan v. Commonwealth, 47 Va. App. 165, 172, 622 S.E.2d 771, 773 (2005) (quoting Cofield v. Nuckles, 239 Va. 186, 194, 387 S.E.2d 493, 498 (1990)).

ANALYSIS

Commission's Failure to Rule

In its first two assignments of error, employer challenges the commission's failure to address its defenses of abandonment and *res judicata*. Employer argued before the commission and now before this Court that claimant, by agreeing to be compensated for his left shoulder injury in the original agreement, abandoned any claim for medical benefits for his neck or upper back injuries. Abandonment is "the relinquishing of a right or interest with the intention of never reclaiming it." Black's Law Dictionary 2 (9th ed. 2009); see also Covington Virginia, Inc. v. Woods, 182 Va. 538, 547, 29 S.E.2d 406, 410 (1944) (equating a "waiver" with "a voluntary abandonment of some known legal right").

Clearly, the review opinion does not address either of these defenses. In its order denying claimant's motion to reconsider, the commission determined that such a ruling was unnecessary because the supplemental agreement and the order approving that agreement constituted a timely award and encompassed claimant's neck and upper back injury. By interpreting the supplemental agreement as intending to include the neck and upper back injuries, the commission implicitly found claimant did not abandon his neck injury. The commission also found that the April 23, 2002 supplemental award order, which confirmed the supplemental agreement, included claimant's neck injury.

The commission does not adjudicate cases piecemeal. Issues raised and not pursued or determined by hearing or formal agreement are abandoned unless specifically deferred. Jones v. United States Federal Credit Union, 55 Va. App. 227, 231, 685 S.E.2d 189, 191 (2009).

Employer cites Jones as dispositive and to strengthen its argument that claimant abandoned any claim for medical benefits for his neck or upper back injuries. In Jones, the claimant's original claim alleged various injuries, including injury to her left side and knee, yet

the memorandum of agreement excluded any mention of her left knee. Eleven years later, Jones sought an additional award for her left knee, based on the original accident. We affirmed the commission's ruling that Jones had abandoned her knee injury claim when she signed the memorandum of agreement, which did not list that injury. We further noted that the supplemental agreement neither expanded nor contracted the scope of injuries.

Unlike Jones, the commission in this case found that the parties did in fact expand the scope of claimant's injuries. Therefore, the abandonment doctrine does not apply.

Employer's *res judicata* argument is premised on its contention that the April 3, 2002 order, approving the original agreement and setting forth only the shoulder injury, was a final, unappealed judgment. We do not disagree with this contention. However, our inquiry does not end there.

The resolution of employer's first two assignments of error, regarding abandonment and *res judicata*, rests on whether the commission correctly interpreted the supplemental agreement as expanding the scope of claimant's injuries. Both parties agreed at oral argument that if the commission's interpretation of the supplemental agreement is correct, employer's abandonment, *res judicata*, and statute of limitations arguments fail. They further agree that in such an event, the parties modified the original award.

The commission found the parties' intent was to expand the nature of the injury, thus modifying the original award. While the specific type of injury was omitted from the supplemental agreement, the commission found that the parties intended to include claimant's neck injury. The commission based its interpretation on a number of inferences that we will discuss below. The best indicator of intent is the parties' actions after the supplemental agreement. Employer paid wage loss benefits for the neck injury for nearly ten years.

"The doctrine of *res judicata* is applicable to decisions of deputy commissioners and the full commission." Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 128, 510 S.E.2d 255, 259 (1999) (*en banc*) (citing K & L Trucking Co., Inc. v. Thurber, 1 Va. App. 213, 219, 337 S.E.2d 299, 302 (1985)). It "'precludes the re-litigation of a claim or issue once a final determination on the merits has been reached.'" Id. (quoting Gottlieb v. Gottlieb, 19 Va. App. 77, 81, 448 S.E.2d 666, 669 (1994)).

Virginia's application of the claim preclusion component of *res judicata* was best stated a century ago: "Every litigant should have opportunity to present whatever grievance he may have" but if given an opportunity to do so and "having failed to avail himself of it, he must accept the consequences." Miller v. Smith, 109 Va. 651, 655, 64 S.E. 956, 957 (1909). So a final decree would not only be binding as to all questions "actually raised and decided," but also to any issue "which properly belonged to the subject of litigation and which the parties, by the exercise of reasonable diligence, might have raised at the time." Smith v. Holland, 124 Va. 663, 666, 98 S.E. 676, 677 (1919). However, final orders may be modified. See generally Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 133-34, 428 S.E.2d 32, 34 (1993).

Here, the final order was later modified by agreement of the parties. The parties were not re-litigating the same issue; they merely agreed to modify the original order. The rationale of *res judicata* – to prevent a party from getting a second bite of the apple – is not applicable when the parties have agreed to the modification. In fact, the Virginia Workers' Compensation Act encourages parties to resolve disputes and reach agreements regarding compensable injuries, as long as those agreements are approved by the commission. See Code § 65.2-701(C). In this case, the parties agreed to modify the original order, so *res judicata* does not apply.

Because the commission found that the parties agreed to expand the type of injury with the supplemental agreement, the commission did not fail to rule on employer's abandonment and

- 9 -

*res judicata* defenses.  Such a ruling was subsumed in the commission's finding regarding the scope of the supplemental agreement.

Supplemental Agreement

As we have stated, the commission's interpretation of the supplemental agreement controls the resolution of employer's abandonment, *res judicata*, and statute of limitations defenses.  The commission found that the parties intended for the supplemental agreement to expand the scope and nature of claimant's injuries to include the neck and upper back.[2]  While the supplemental agreement did not list the specific nature of the injury, the commission based its interpretation on the following facts:  the agreement covered the period of disability related to the claimant's first neck surgery, which occurred on May 30, 2001; employer paid for that neck surgery and other treatment for claimant's neck; medical benefits were awarded for as long as necessary; and employer continued to pay wage loss benefits for the neck injury until July 5, 2010.  The commission concluded:

> We recognize that the Supplemental Memorandum of Agreement which became the basis for the second award did not identify the nature of the injury.  Nonetheless, we entered an award consistent with the joint request of the parties.  We have the inherent authority to interpret our awards in order to enforce them.  Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 129, 510 S.E.2d 255, 260 (1999).  We must give reasonable, meaningful and practical effect to the award from an agreement which left the nature of the injury ambiguous.  We therefore look to extrinsic evidence.  In this case, the period of disability awarded on account of the Supplemental Memorandum of Agreement corresponded with the claimant's neck injury.  The employer accepted responsibility both for the cost of the surgery and the resulting disability and therefore the award necessarily included the neck.

---

[2] A factfinder's ruling on intent is a factual finding, see Robertson v. Commonwealth, 18 Va. App. 635, 639, 445 S.E.2d 713, 715 (1994), and "[i]t is fundamental that a finding of fact made by the commission is conclusive and binding upon this court on review," Sneed v. Morengo, 19 Va. App. 199, 204, 450 S.E.2d 167, 171 (1994) (citations omitted).

The commission's finding is consistent with <u>Boxley v. Onorato</u>, 218 Va. 931, 243 S.E.2d 201 (1978). There, the original memorandum of agreement specified only a fractured rib, contusion of the left shoulder, and a sprained right knee. The supplemental agreement did not enlarge the description of claimant's injuries to include injuries to claimant's neck and back. Claimant sought additional compensation for those injuries. The supplemental agreement was filed within the statutory limitations period. <u>Boxley</u> addressed whether the supplemental agreement enlarged the nature of the injuries to the neck and back. The Supreme Court of Virginia held that it did, because that agreement incorporated a physician's report which described the neck and back injuries. The Court noted that "[m]oreover, the carrier was advised of the back and neck pains within six months of the accident by Dr. Daner and subsequently through the reports of Dr. Butterworth which resulted in extending the payments of compensation." <u>Id.</u> at 936, 243 S.E.2d at 204.

<u>Boxley</u> instructs us that we look not only to the express words of the agreement, but to extrinsic evidence and to employer's actual knowledge regarding the type of injury. In the instant case, as in <u>Boxley</u>, the commission considered the extrinsic evidence in interpreting the supplemental agreement.

We conclude the commission did not err in its interpretation of the supplemental agreement. "'Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'" <u>Gallahan v. Free Lance Star Publishing Company</u>, 41 Va. App. 694, 703, 589 S.E.2d 12, 17 (2003) (quoting <u>Allen & Rocks, Inc. v. Briggs</u>, 28 Va. App. 662, 673, 508 S.E.2d 335, 340 (1998)).[3]

_____

[3] In <u>Gibson</u>, 29 Va. App. at 129, 510 S.E.2d at 260, we stated that "courts have the authority to interpret their own orders. Furthermore, when construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court. We hold that these principles apply when interpreting the adjudicative orders of an administrative agency." (Citations omitted).

*De Facto* Award

Employer next contends the commission erred in determining the existence of a *de facto* award.

In Ryan's Family Steak Houses, Inc. v. Gowan, 32 Va. App. 459, 528 S.E.2d 720 (2000), we reiterated our holding from National Linen Serv. v. McGuinn, 5 Va. App. 265, 269-70, 362 S.E.2d 187, 189 (1987) (*en banc*) as follows:

> [W]here the employer has stipulated to the compensability of the claim, has made payments to the employee for some period of time without filing a memorandum of agreement, and fails to contest the compensability of the injury, it is "reasonable to infer that the parties ha[ve] reached an agreement as to the payment of compensation," and a *de facto* award will be recognized.

Gowan, 32 Va. App. at 463, 528 S.E.2d at 722 (quoting McGuinn, 5 Va. App. at 269-70, 362 S.E.2d at 189).

In ruling that claimant proved the existence of a *de facto* award, the commission in this case found as follows:

> Here, the fact that the employer, for many years, paid disability and medical benefits for the claimant's neck injury, and the fact that a Supplemental Agreement to Pay Benefits was submitted to the commission within the limitations period covering, by implication, the claimant's neck injury, constitute a sufficient basis upon which to find a *de facto* award. It is true that such an award will not be entered if, at the hearing of the case, the employer in good faith disputes the compensability of the claim.
>
> The employer here contends that it did dispute the compensability of the neck injury. However, they offered no facts to even suggest that the neck and upper back injuries were not compensable, or that there was some other basis upon which they did not agree to an award for the neck injury. Accordingly, we find that the dispute was not, for the purpose of a *de facto* award, made in good faith.

Employer raises a number of issues concerning the *de facto* award.[4]  First, the holding in

McGuinn was premised on the fact that Code § 65.1-93, as it existed then, did not provide for a

penalty for failing to file a memorandum of agreement.  Employer contends a subsequent

amendment did impose a penalty for failure to file, undercutting the very purpose of a *de facto*

award.  Second, a *de facto* award must be based on the payment of compensation, not medical

benefits.  Third, employer argues, it did contest the compensability of the claim for a neck injury.

Fourth, there was no actual agreement or stipulated agreement as to the compensability of

claimant's neck injury.  Fifth, no evidence supported the deputy commissioner's finding that

claimant relied on employer's continued payment of benefits.  Sixth, the *de facto* award doctrine

cannot circumvent the statute of limitations.[5]

In Gowan, this Court rejected the employer's argument that the McGuinn rationale had

been eviscerated by the amendment authorizing a penalty for not filing a memorandum of

agreement, noting:

> In neither the recodification of former Code § 65.1-93, nor the
> revision of the present version of Code § 65.2-701 did the General
> Assembly "reject[] or modify [our] judicial interpretation of the
> statute in issue.  'Under these circumstances, the construction
> given to the statute is presumed to be sanctioned by the legislature
> and therefore becomes obligatory upon the courts.'"  Cochran v.
> Commonwealth, 258 Va. 604, 607, 521 S.E.2d 287, 289 (1999)
> (quoting Vansant and Gusler, Inc. v. Washington, 245 Va. 356,
> 361, 429 S.E.2d 31, 33-34 (1993)).  We, accordingly, find that
> Code § 65.2-701(A) authorizes *de facto* awards and that the
> commission did not err in recognizing their validity.

Gowan, 32 Va. App. at 463, 528 S.E.2d at 722.

Additionally, we have approved *de facto* awards in numerous cases since the 1991

revision of Code § 65.2-701(A).  See Henrico Pub. Utils. v. Taylor, 34 Va. App. 233, 540 S.E.2d

---

[4] Employer does not contest that the payments were voluntary.

[5] This assertion is not contested by claimant.

- 13 -

501 (2001); <u>Lyons v. Newport News Shipbuilding</u>, No. 0304-05-1, 2005 Va. App. LEXIS 532 (Va. Ct. App. Dec. 28, 2005); <u>Casey Chevrolet v. Danforth</u>, No. 1761-00-1, 2001 Va. App. LEXIS 76 (Va. Ct. App. Feb. 20, 2001).

In <u>Lysable Transport Inc. v. Patton</u>, 57 Va. App. 408, 702 S.E.2d 596 (2010), we confirmed the efficacy of a *de facto* award, although we found it did not apply to the facts of that case. We said, "[t]he *de facto* award doctrine applies only when 'the employer has stipulated to the compensability of the claim, has made payments to the employee for some significant period of time without filing a memorandum of agreement,[6] and fails to contest the compensability of the injury . . . .'" <u>Id.</u> at 415, 702 S.E.2d at 599 (quoting <u>Gowan</u>, 32 Va. App. at 463, 528 S.E.2d at 722 (emphasis omitted) (footnote added). Only when these factors are present is it "reasonable to infer that the parties have come to an agreement" regarding the compensability of a claim. <u>Id.</u> In <u>Lysable</u>, we concluded that the employer expressly contested compensability of the injury and there was no agreement or stipulation of compensability.

In the instant case, the commission confirmed the deputy commissioner's factual finding that the disagreement over the "nature of claimant's injury is only recent." The commission found the "dispute was not, for the purpose of a *de facto* award, made in good faith." Factual findings of the commission are conclusive and binding on this Court when they are based on credible evidence. <u>James v. Capitol Steel Constr. Co.</u>, 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

Employer further contends a *de facto* award cannot be based on the payment of medical benefits alone, relying on Code § 65.2-701(A), which refers to "compensation." Employer cites <u>The Uninsured Employer's Fund v. Wilson</u>, 46 Va. App. 500, 619 S.E.2d 476 (2005), for the

---

[6] Because employer never contended that the presence of a memorandum of agreement defeats the *de facto* award, we will not address that issue.

proposition that the word "compensation," in a workers' compensation context, means wage loss compensation, excluding medical benefits. Id. at 503, 619 S.E.2d at 478. We can assume without deciding a *de facto* award cannot be based on medical benefits alone. However, in addition to the medical benefits, employer paid wage loss compensation to claimant for over ten years. Thus, employer's contention has no merit.

We conclude that under McGuinn and its progeny, the elements warranting a *de facto* award were present in this case, so the award was supported by the evidence: the parties were in agreement as to the amount of compensation as set forth in the supplemental agreement; employer made wage loss compensation payments and medical payments for the claimant's neck injury for over ten years without contesting compensability; there was an agreement as to the compensability of the neck injury as evidenced by employer paying wage loss benefits[7]; and employer was aware, and thus on notice, that claimant had ongoing treatment for the neck injury.

Statute of Limitations

Employer next contends that claimant's claim for his neck injury was not filed until December 7, 2010, more than two years after the work-related injury of October 26, 2000. Code § 65.2-601 requires a claim be filed within two years after the accident, or the claim "shall be forever barred."

Like its other assignments of error, employer's statute of limitations argument is also governed by the commission's ruling on the supplemental agreement. It is undisputed that the agreement fell within the two-year statute of limitations. Thus, because the supplemental

---

[7] As we explained in Gowan, 32 Va. App. 459, 528 S.E.2d 720, where the employer has stipulated to the compensability of the claim, has made payments to the employee for some significant period of time without filing a memorandum of agreement, and fails to contest the compensability of the injury, it is "reasonable to infer that the parties ha[ve] reached an agreement as to the payment of compensation," and a *de facto* award will be recognized. Id. at 463, 528 S.E.2d at 722 (quoting McGuinn, 5 Va. App. at 269-70, 362 S.E.2d at 189).

- 15 -

agreement encompassed the neck injury, the statute of limitations did not bar an award based on the neck injury.

While both parties, in their briefs, argue whether imposition and equitable estoppel were relevant to the statute of limitations determination, the commission addressed neither of these issues. Its ruling on whether the statute of limitations barred recovery was based solely on the efficacy of the supplemental agreement, which both parties agree was filed within two years of the injury.

Employer contends there is no evidence to support the deputy commissioner's finding that claimant relied on employer's continued payment for related disability payments. We reject this contention, because the commission did not so find nor did it incorporate the deputy commissioner's specific finding of reliance in its opinion. We do not review the opinion of a deputy commissioner. Code § 17.1-405 gives this Court jurisdiction over "[a]ny decision of the Virginia Workers' Compensation Commission."

CONCLUSION

The commission did not err in finding a *de facto* award was proper in this case. We further uphold the commission's interpretation of the supplemental agreement, thus resolving the abandonment, statute of limitations, and *res judicata* defenses in claimant's favor. For the foregoing reasons, we affirm the rulings of the commission.

<u>Affirmed.</u>