COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, Friedman and Callins
Argued at Salem, Virginia

GLENN RICH

                                     MEMORANDUM OPINION[*] BY

v.       Record No. 1154-21-3            JUDGE WESLEY G. RUSSELL, JR.
                                         MAY 10, 2022

FACEBOOK INC. VA OCIP,
 CHUBB INDEMNITY INS. CO. AND
 ESIS, INC.

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

      Hannah Bowie (Brandon S. Osterbind; Kelly A. Osterbind;
      Osterbind Law, PLLC, on briefs), for appellant.

      Brian J. McNamara (Scott C. Ford; Ford Richardson, PC, on brief),
      for appellees.

Glenn Rich suffered a compensable injury to his left foot while working for Facebook,

Inc.,[1] and the Commission awarded him lifetime medical benefits for this injury.  When Rich

later sought payment for specific treatment he received for deep vein thromboses (DVTs) in his

left leg, the Commission denied his claim on *res judicata* grounds.  Rich appeals, arguing that

the Commission erred in concluding his claim was barred.  For the following reasons, we affirm

the judgment of the Commission.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Employer's insurance carrier and claim administrator, Chubb Indemnity Ins. Co. and
ESIS, Inc., respectively, are also parties to this appeal.  We refer to all appellees collectively as
"employer."

BACKGROUND[2]

I.  The accident, the initial claims, and the resulting award

Rich was employed by employer as a safety compliance professional.  He sustained a compensable injury on October 17, 2018, while at his job site when he stepped on a pipe and rolled his foot.  He sought treatment at Patient First the following day and was referred to OrthoVirginia, where he was treated primarily by Dr. Zdzislaw Ratajczak.  Rich was diagnosed with "[n]ondisplaced fracture of fifth metatarsal bone" in his left foot.  Rich initiated a claim for workers' compensation benefits on November 4, 2018.  He asserted that he had injured his "5th Metatarsal bone, left foot" when he "[s]tepped on a capped [] piece of pvc that was stubbed up [] through a concrete slab/floor."

Dr. Ratajczak treated the foot fracture with a short-leg cast and directed Rich to use crutches to keep weight off his left foot.  Over the next few months, Rich had repeated follow-up appointments with Dr. Ratajczak.  Depending on Rich's clinical indications at various times, Dr. Ratajczak provided him with either "no work" or restricted "sedentary duty" notes.  Rich progressed from a cast to a high tide moon boot.  On December 21, 2018, Dr. Ratajczak observed "near complete healing of a fifth metat[arsal] base fracture" and noted that "the patient is almost healed."  He further reported that Rich had "state[d] his pain has improved . . . and he has improved."  After a January 11, 2019 appointment, Dr. Ratajczak concluded that Rich was permitted to be "[f]ull weight bearing in normal shoes[,]" but the doctor continued to recommend that Rich be restricted to light-duty work with "[n]o climbing ladders or running."

[2] On appeal from the Commission, we view the evidence in the light most favorable to the prevailing party before the Commission, in this case, the employer.  *Layne v. Crist Elec. Contractor, Inc.*, 64 Va. App. 342, 345 (2015).

In February 2019, Rich experienced significant swelling in his foot and leg. Upon referral from Dr. Ratajczak, Rich visited Central Lynchburg General Hospital, where an ultrasound revealed that he was "positive for [DVT] in the left lower extremity[.]" Rich was then referred to Stroobants Centra Cardiovascular Center (Centra), where he began seeing Dr. Evan Ownby, a cardiologist. Dr. Ownby prescribed Xarelto and recommended a compression stocking.

By letter dated April 25, 2019, Rich informed the Commission that, because he had "sustained injuries to his left foot while in the course of his employment[, he] is requesting compensation for (a) TTD and/or TPD benefits from 10/17/2018 to present and continuing." Rich further relayed that he "is also requesting (b) compensation for permanent partial disability, when rated and reaching maximum medical improvement." The Commission accepted the letter as Rich "filing a claim in [this] matter."

Experiencing chest pains and faintness, Rich went to the emergency room, once in April and again in May 2019. Upon Dr. Ratajczak's referral in May 2019, Rich sought further foot treatment with Dr. Michael Diminick, who performed surgery on Rich's left foot. Rich's fracture was healed with the insertion of a pin, but he continued to experience DVTs complications.

On June 11, 2019, Rich filed an application for hearing seeking "reimbursement for lost wages" suffered after being "terminated from my job due to unsatisfactory attendance, which is a direct result of multiple doctors' appointments . . . and my inability to walk due to intermittent

pain and numbness' of my left foot."[3]  Rich asserted, "This is a byproduct of OrthoVA Dr. Ratajczak's failure to recognize and treat me early on for blood clots in my left leg that were a direct result of my left foot 5th [m]etatarsal [f]racture."  Rich noted, "My injury date is 10/17/201[8], and the date I was diagnosed for my blood clots . . . [is] 02/08/2019."  Rich additionally sought payment for bills "related to care [he] received for [his] 5th [m]etatarsal [f]racture left foot and left leg blood clots[,]" including Xarelto and compression stockings, as Dr. Ownby specifically had prescribed to treat his DVTs.

In discovery, Rich was asked to "[s]tate each and every injury that you contend you suffered as a result of your alleged accidental injury."  Rich responded, "I broke my 5th metatarsal bone on my left foot.  This condition resulted in a blood clot in my left leg."  In his pre-hearing statement, Rich claimed as "body parts alleged to have been injured" his "[l]eft foot injury" *and* "left leg DVT."

A hearing was held before a deputy commissioner on October 16, 2019, to address Rich's requests for wage compensation and medical benefits.  At the beginning of the hearing, the deputy commissioner confirmed that the purpose of the hearing was to address Rich's "claims which were filed on November 4, 2018, April 25, 2019, and two claims on June 11, 2019[,] in regards to an accident which occurred on October 17, 2018."  Having confirmed that, the deputy commissioner sought to ascertain if the parties had been able to agree regarding at least some of the issues raised by the multiple claims asserted by Rich.  In the "STIPULATIONS" section of her opinion, the deputy commissioner summarized the stipulations of the parties as follows:

---

[3] In December 2018, Rich sought new employment; in early January, he left his position with employer and began working as a safety manager for another company.  He remained in that position until May 2019, when he was terminated because "he is not at work enough to do the job site visits or handle the other duties that need to be taken care of."  Rich was in an off-work status until July 26, 2019.  Rich eventually was hired by Delta Star in August 2019, and he started work on September 9, 2019.

- 4 -

The parties stipulated to an average weekly wage of $1,300.44. The [employer] stipulated to a compensable injury to the left foot 5th metatarsal. The [employer] also stipulated to temporary total disability from October 24, 2018 to October 30, 2018; from November 14, 2018 to November 23, 2018; and from May 18, 2019 to July 26, 2019.

Notably absent is any mention of a stipulation regarding Rich's DVTs.[4]

At the hearing, Rich testified to how he injured himself, his course of treatment with respect to his fracture and DVT treatment up to that point, and his confusion as to his work status over the relevant periods. Included in the medical records he introduced were reports from OrthoVirginia, Central Lynchburg General Hospital, and Centra. Centra reported several times that Rich's DVTs are "felt to be provoked and [secondary to] his left foot [fracture.]" Employer presented Rich's numerous work status notes.

On October 18, 2019, the deputy commissioner issued an opinion addressing the "claims filed . . . in regards to injuries to the left foot and the 5th metatarsal bone that occurred on October 17, 2018." Recounting that employer had "stipulated to a compensable injury to the left foot 5th metatarsal[,]" but disagreed with the periods of disability, the opinion expressed that, "[g]iven the stipulation . . . of a compensable injury, we mostly look to the medical records in regards to work status." The opinion noted Rich's DVTs and cardiology referral among the findings of fact, but it did not address the cause of the condition and the ultimate award did not

---

[4] Although neither raised by Rich nor addressed in the multiple opinions issued in the proceedings below, we note that employer, in the pre-hearing statement it filed before the October 16, 2019 hearing, indicated under the section entitled "THE PARTIES CAN AGREE TO THE FOLLOWING FACTS" that it was prepared to agree that "claimant's diagnosis of DVT in left leg is a compensable consequence of the original injury[.]" When asked about the statement during oral argument in this Court, employer stated that the statement did not represent a binding stipulation, but rather, represented a nonbinding offer to stipulate. Rich agreed, characterizing the statement as an "offer to stipulate" but not a stipulation. Because the parties agree that the statement does not represent a stipulation and the record reflects that neither the deputy commissioner nor the full Commission adopted it, we do not consider the statement in our resolution of the appeal.

specifically mention treatment for it. Instead, Rich was awarded "medical benefits . . . for as long as necessary for reasonable, necessary and authorized treatment causally related to the claimant's October 17, 2018 injuries to the left foot and the 5th metatarsal bone."[5] Rich's claim for PPD benefits was reserved. Neither party sought review of the deputy commissioner's decision, and the award became final.

## II. The instant claim

Although Rich's broken foot healed, he continued to experience pain and swelling related to DVTs. Rich remained in Dr. Ownby's care, but towards the end of 2019, he was not feeling as though he was making sufficient improvement. Also encountering difficulty in scheduling appointments, Rich asked Dr. Diminick for a referral for a second opinion; Dr. Diminick provided him a referral to the cardiology department at the University of Virginia (UVA). Rich then received tests and care at UVA. UVA recommended supplements and angiography. Rich followed the recommended treatments and underwent the surgery in June 2020.

On August 19, 2020, Rich filed with the Commission a "motion to compel payment" requesting "an order . . . compelling [employer] to pay for all treatment related to [his] DVT which occurred as a result of his workplace injury, reimbursement for all medical expenses [he] has paid out of pocket, and reimbursement for mileage to and from his appointments at UVA . . . ." In support of his motion, Rich cited the deputy commissioner's award letter and stated that his treating physician had referred him to UVA Cardiology to address the issue with DVTs and that, according to the physician, the referral was "medically necessary to address [his] DVT diagnosis caused by his work injury on October 17, 2018."

---

[5] Rich also was granted temporary total disability for several time periods.

Employer objected, arguing that Rich's award for medical benefits was limited to the "left foot and the 5th metatarsal bone" and that he "was not awarded benefits associated with DVT/'left leg blood clots.'" Citing this Court's decision in *Brock v. Voith Siemens Hydro Power Generation*, 59 Va. App. 39 (2011), employer contended Rich's motion was barred by *res judicata* because, in addition to his fracture, his claim for left leg blood clots had been "the subject of the evidentiary hearing on October 16, 2019[,]" but the deputy commissioner did not provide for an award or reservation related to any DVT or blood clot treatment and Rich elected not to appeal that decision. Employer further argued that "the medical treatment in question is not reasonable, necessary, or related to the claimant's work accident."

By letter dated August 24, 2020, a deputy commissioner denied Rich's motion. The deputy commissioner deemed the motion a motion to show cause and denied it without a hearing upon finding that Rich's award "did not specifically award payment of treatment for DVT." Rich filed a motion to reconsider, which was denied, and then sought full Commission review.

Pending the Commission's review, on September 21, 2020, Rich filed an application for hearing seeking payment for treatments he had undergone "to address a DVT related to [his] compensable injury and resulting treatment." Rich asserted that "[t]he DVT treatment is being recommended by an authorized treating physician" and employer has "offered no basis for denying the treatment and in fact authorized and paid for prior DVT treatment until the recommendation was made for a more invasive and expensive treatment modality to address the claimant's DVT." In response, employer asserted that there was no causal connection between the injury and medical treatment, that the treatment was not provided by an authorized physician, and that *res judicata* applied.

On October 21, 2020, upon its review of the deputy commissioner's denial of Rich's August 19, 2020 motion, the Commission issued an opinion overruling the deputy commissioner.

- 7 -

Finding exception to the lack of an evidentiary hearing, the Commission vacated the decision and "refer[ed] the motion to the on-the-record hearing docket to be heard with the claimant's September 21, 2020 request for hearing." The Commission noted that it had "reviewed the [m]otion and f[ound] therein the clear articulation of a claim to have the cited DVT and related treatment deemed covered under the existing [a]ward" and referred the matter "for processing as a new request for hearing."

The deputy commissioner conducted an evidentiary hearing on March 17, 2021, to address the "claim for payment for DVT treatment at UVA." Rich testified at the hearing regarding his treatment, his understanding of what caused the DVTs, and how he came to be treated at UVA. When asked "what injuries did you sustain while working?[,]" Rich answered, "Left foot fracture and fifth metatarsal and DVT."

By opinion dated April 7, 2021, the deputy commissioner denied Rich's "[m]otion to [c]ompel payment for DVT treatment at UVA." In denying the motion, the deputy commissioner specifically considered whether "claimant's claims were barred under the doctrines of *res judicata* or claims preclusion" and "[w]hether the DVT treatment at UVA was unauthorized medical treatment."

The deputy commissioner further summarized Rich's case as follows: "claimant in this case filed . . . claim[s] for various injuries, including DVT. The matter proceeded to hearing and the parties stipulated to left foot and ankle injuries. The DVT was not addressed. The only injury awarded was for the left foot/ankle." As a result, the deputy commissioner found that any claim related to DVTs was "barred by the doctrines of *res judicata* and claim preclusion" and

explained that "claimant cannot now attempt to litigate what should have been litigated at the earlier hearing."[6]

Rich sought full Commission review. He assigned error to the deputy commissioner's findings that his claim for DVT treatment was barred by *res judicata* principles and that the treatment was unauthorized. With respect to *res judicata*, Rich argued that the deputy commissioner had "mischaracterize[ed his] DVT as a new and distinct injury from his compensable, workplace injury occurring on October 17, 2018" and had erred in finding that the "claims made prior to the original [award] included DVT as an injury instead of a symptom or sequalae of his fractured foot" and thus further erred in concluding that "[c]laimant's DVT should have been litigated at the earlier hearing . . . even though the [e]mployer stipulated to the injury and the only matters addressed at the hearing concerned indemnity benefits . . . ."

Rich further contended that he "could not raise or litigate the issues regarding the payment of DVT/blood clot treatment because it did not exist to be litigated at that time. The [e]mployer was paying for [the] DVT/blood clot treatment." Rich asserted that "[t]he DVT/blood clot was not a claim or injury that was brought forth to be adjudicated at the first hearing" and his "indication that the DVT/blood clot was a result of his left foot injury does not mean that [h]e was claiming [h]is DVT/blood clot as an injury. It simply means that the DVT/blood clot developed because of his left foot injury."

In its position statement, employer contended that "a claim for medical benefits to cover left leg blood clots/DVT . . . was pending at the time of the October 2019 hearing," but "claimant failed to raise the issue" and thus any such claim was barred under *Brock*. Employer further asserted that "claimant has provided no support for []his contention" that the DVT is a "symptom

---

[6] The deputy commissioner also found that Rich's treatment at UVA did not constitute authorized treatment.

or sequelae . . . of [his] compensable work place injury of his left foot and 5th metatarsal." Employer contended that, contrary to such an assertion, "DVT is clearly a separate condition from a metatarsal fracture. The two conditions occur in different parts of the body and in different symptoms." Although allowing for the possibility that the "separate condition" of DVTs could be "caused directly . . . by the metatarsal fracture[,]" employer maintained that the deputy commissioner "did not err in treating the DVT as a new and distinct injury from the initial left foot injury."

Upon its on-the-record review, the Commission issued a decision affirming the deputy commissioner. The Commission "agree[d] this case is analogous to *Brock v. Voith Siemens Hydro Power Generation*, 59 Va. App. 39 (2011)." The Commission explained as follows:

> In *Brock*, the claimant had filed a claim for injuries to various body parts and proceeded to an evidentiary hearing. At the hearing, the parties stipulated only to a left shoulder injury. None of the parties or the [d]eputy [c]ommissioner mentioned the additional claimed body parts, and the [d]eputy [c]ommissioner . . . award[ed] benefits only for the left shoulder injury. When the claimant re-filed the claim for the additional body parts, the Court of Appeals of Virginia affirmed the Commission's determination that the doctrine of res judicata barred the claimant "from litigating matters he neglected to raise at his earlier evidentiary hearing." *Id.* at 49.

With respect to Rich's case here, the Commission determined that it was similar to *Brock* in that,

> Despite the claims of left leg blood clots as well as the submission of evidence discussing February 2019 medical treatment related to the claimant's left leg blood clots, the claim for this condition as a compensable injury was not addressed. . . . [T]he [d]eputy [c]ommissioner awarded medical benefits related to the claimant's injuries to his left foot and the 5th metatarsal bone only. The claimant did not request review of this decision, and it is final.

- 10 -

The Commission further reasoned,

> claimant asserts the current claim for DVT/blood clot treatment at UVA renders it a separate and distinct claim from the claim [addressed] . . . at the October 16, 2019 hearing. We do not agree with this contention. The claim for medical treatment related to the same condition was before the [d]eputy [c]ommissioner at the October 16, 2019 hearing, and the claimant failed to pursue that claim. The mere fact that the claimant is requesting the treatment for this condition at a different medical facility does not render it a new and distinct claim.

Based on these findings, the Commission affirmed the deputy commissioner's opinion concluding that *res judicata* barred Rich's request for DVT treatments and denied his claim.[7]

This appeal followed. Rich challenges the Commission's determination that *res judicata* barred his August 19, 2020 and September 21, 2020 claims seeking reimbursement for his DVT treatments. He further contends that the Commission "erred in finding that [his] left foot and 5th metatarsal bone compensable injury does not include the DVT/blood clots he experienced."

ANALYSIS

I. Standard of review

On appeal, decisions of the Commission are "presumed to be correct[.]" *Humphries v. Newport News Shipbuilding & Dry Dock Co.*, 183 Va. 466, 476 (1945). Accordingly, "[a]s the appellant in this case, the claimant bears the 'burden of showing' that the Commission committed 'reversible error.'" *Jones v. Crothall Laundry*, 69 Va. App. 767, 774 (2019) (citing *Burke v. Catawba Hosp.*, 59 Va. App. 828, 838 (2012)). "On appeal, we defer to the [C]omission in its role as fact finder[,]" *Tuck v. Goodyear Tire & Rubber Co.*, 47 Va. App. 276, 282 (2005); however, "the [C]ommission's legal determinations are not binding on appeal and

---

[7] Because its ruling on *res judicata* fully resolved the case, the Commission did not reach the question of whether Rich's treatment at UVA was unauthorized.

- 11 -

will be reviewed *de novo*." *Wainwright v. Newport News Shipbuilding & Dry Dock Co.*, 50 Va. App. 421, 430 (2007).

## II. *Res judicata*

The principle of *res judicata* "precludes the re-litigation of a claim or issue once a final determination on the merits has been reached." *Tyco Elecs. v. Vanpelt*, 62 Va. App. 160, 171 (2013) (quoting *Rusty's Welding Serv., Inc. v. Gibson*, 29 Va. App. 119, 128 (1999)). It bars from consideration "[c]laims . . . 'made or tendered by the pleadings [in the earlier litigation],' as well as those 'incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered.'" *Brock*, 59 Va. App. at 46 (quoting *Lofton Ridge, LLC v. Norfolk S. Ry.*, 268 Va. 377, 381 (2004)). The doctrine applies to unappealed, final decisions in workers' compensation proceedings whether rendered by the full Commission or a deputy commissioner. *Gibson*, 29 Va. App. at 128.

"The determination of res judicata is a question of law and is reviewed *de novo*." *Advance Auto & Indem. Ins. Co. of N. Am. v. Craft*, 63 Va. App. 502, 514 (2014) (quoting *Pruden v. Plasser Am. Corp.*, 45 Va. App. 566, 573 (2005)). The party "who asserts the defense of *res judicata* has the burden of proving by a preponderance of the evidence that" a claim is barred. *Wainwright*, 50 Va. App. at 435 (quoting *Fodi's v. Rutherford*, 26 Va. App. 446, 449 (1998)).

## III. Application to Rich's claim related to DVTs

In finding that *res judicata* barred Rich's claim related to DVTs, the Commission found that our decision in *Brock* provided the rule of decision. We agree.

In *Brock*, the claimant's pleadings placed multiple injury claims before the deputy commissioner for decision. *Brock*, 59 Va. App. at 48. In this case, the Commission reasonably interpreted Rich's June 11, 2019 letter as a claim seeking compensation related to both his left

foot injury and DVTs. In discovery responses, Rich confirmed he was seeking compensation related to both his left foot injury and DVTs, identifying the injuries he suffered as both a "broke[n] . . . 5th metatarsal bone on my left foot" and a resulting "blood clot in my left leg." To the extent there was any room to doubt that Rich was seeking compensation for both a foot injury and DVTs at the October 2019 hearing, such doubts were extinguished by his pre-hearing statement in which Rich claimed as "body parts alleged to have been injured" his "[l]eft foot injury" *and* "left leg DVT." Thus, it reasonably cannot be disputed that the issue of compensability of DVTs, whether as an initial injury or as a compensable consequence, represented a "[c]laim[] . . . 'made or tendered by the pleadings'" at the time of the October 2019 hearing before the deputy commissioner. *Id.* at 46 (quoting *Lofton Ridge*, 268 Va. at 381). Accordingly, the issue clearly falls within the "could-have-litigated-should-have-litigated principle," *id.* (quoting *Va. Imps. Ltd. v. Kirin Brewery of Am., LLC*, 50 Va. App. 395, 410 n.6 (2007)), rendering the deputy commissioner's unappealed decision a final resolution of the issue of whether Rich can receive compensation related to DVTs.

Despite the pleadings placing the issue squarely before the deputy commissioner, the deputy commissioner's decision did not address Rich's entitlement to compensation related to DVTs. The failure of the deputy commissioner to rule on the issue and the failure of Rich to take any action to address that failure render this case indistinguishable from *Brock*. As in *Brock*, "[n]othing in the record suggests [Rich] ever sought to withdraw . . . his claim" for compensation related to DVTs. *Id.* at 48. "Nor did he at any time ask the deputy commissioner to hold open the evidentiary record to later consider allegations" related to DVTs. *Id.*

Because we find the case indistinguishable from *Brock*, we conclude that "the [C]ommission [correctly] applied settled principles of *res judicata* to bar [Rich] from litigating

matters he neglected to raise at his earlier evidentiary hearing[.]" *Id.* at 49.  Accordingly, we affirm the judgment of the Commission.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Commission in this matter.

*Affirmed*.