COURT OF APPEALS OF VIRGINIA

Present: Judges Decker, Russell and AtLee
Argued at Richmond, Virginia

CRIS R. ANDERSON

v.     Record No. 0697-15-2

CRIS R. ANDERSON,
 d/b/a ANDERSON PLUMBING AND
 FIRSTCOMP INSURANCE COMPANY

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
NOVEMBER 10, 2015

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Cris R. Anderson, *pro se*.

Megan B. Caramore (Brian L. Sykes; Vandeventer Black LLP, on
brief), for appellees.


Cris R. Anderson, claimant, appeals a decision of the Workers' Compensation

Commission denying him benefits. On appeal, claimant contends a majority of the Commission

erred in finding: 1) claimant unjustifiably refused to cooperate with vocational rehabilitation

efforts; and 2) the March 6, 2013 injury from a fall was not a compensable consequence of the

original injury suffered on August 18, 2011.[1] For the reasons that follow, we affirm the

Commission's ruling that claimant unjustifiably refused to cooperate with vocational

---

[1] In a third assignment of error, appellant contends, "[t]he [d]eputy [c]ommissioner erred by not considering any medical evidence of the record and awarding only medical benefit [sic] for the compensable consequence injury." Code § 17.1-405 gives this Court jurisdiction over "[a]ny final decision of the Virginia Workers' Compensation Commission." Thus, our review extends only to the Commission's ruling, not the opinion reached by the deputy commissioner. See Tyco Elecs. & Ins. Co. of the State of Pa. v. VanPelt, 62 Va. App. 160, 178, 743 S.E.2d 293, 302 (2013) ("We do not review the opinion of a deputy commissioner."). Therefore, we do not address this assignment of error on appeal.

rehabilitation efforts, but reverse the Commission's conclusion that injuries suffered in a fall under these circumstances never can constitute a compensable consequence.

BACKGROUND

Claimant owned his own plumbing business. On August 18, 2011, claimant suffered a compensable injury to his right shoulder. The insurance carrier (hereinafter "employer") accepted the injury as compensable. The Commission awarded claimant lifetime medical benefits and temporary total disability beginning on November 10, 2011.

For his shoulder injury, claimant was treated by Dr. Kenneth Zaslav, an orthopaedist. Dr. Zaslav treated claimant for a number of years after the accident, concluding that, as of June 17, 2013, claimant had achieved "MMI" or maximum medical improvement. Dr. Zaslav concluded that claimant was "unable to return to his pre-injury work level." Dr. Zaslav did release him to light duty, providing restrictions for future employment, including no "lifting, carrying, pushing, [or] pulling of any kind" and specifically stating that claimant could not lift more than five pounds with his left hand. Having set forth the restrictions, Dr. Zaslav stated his hope that the workers' compensation process would result in "job training" so claimant could "find . . . a new job."

While he was still under Dr. Zaslav's care for his shoulder injury, claimant, on March 6, 2013, slipped and fell on snow-covered deck steps at his residence and claimed that he injured his lower back and left buttock as a result. Claimant testified before the deputy commissioner that he believed he had an appointment with Dr. Zaslav the day of the fall for treatment related to his August 18, 2011 shoulder injury and that the fall occurred as he was walking from his house to his car so that he could drive to the appointment. He thought he had a 1:20 p.m. appointment, but was unaware that his wife had told the doctor's office earlier that he would not be coming in that day. He testified that he called his doctor's office and left a message that he was on his way,

- 2 -

yet the office notes from the doctor's office do not reflect that claimant called. They do, however, show that his wife called to cancel the appointment because claimant was not feeling well that day and was concerned about travel due to weather conditions. The office note reads: "spoke with wife, patient not feeling well and did not want to drive in the weather . . . will call to [reschedule]." Claimant filed a change-in-condition application on May 29, 2013, seeking medical benefits for the injuries that he claims to have suffered in the fall.

Jennifer Jurlando, a vocational case manager at GenX Services, contacted claimant on August 8, 2013, to help him secure employment within his medical restrictions. When she first met with him, he "was resistant to provide me with any information about what he might like to do or be able to do." Ms. Jurlando found three potential positions for claimant, including one full time and one part time position at Lowe's. On August 20, she spoke with Michael Saltisiak, the human resource manager at Lowe's, and he indicated that he was eager to speak to claimant about a job. She discussed claimant's work restrictions with Mr. Saltisiak, and he assured her that he was willing to work with claimant within those restrictions. Ms. Jurlando asked claimant to apply directly to Mr. Saltisiak. She then asked claimant to meet her at Lowe's on August 23. Claimant called her on August 22 and cancelled the appointment. She rescheduled the appointment for August 27. Claimant called Ms. Jurlando while she was on her way to that meeting and cancelled. She rescheduled the meeting for September 4. On September 3, claimant cancelled the meeting. He also told Ms. Jurlando not to schedule any more appointments with Lowe's and not to schedule any more vocational appointments or interviews. Ms. Jurlando testified that "[claimant] felt unwilling" to cooperate as of that date.

Claimant explained to the deputy commissioner that the reason he did not want to meet Ms. Jurlando at Lowe's was that the medications he was taking made him feel "lousy and

drowsy." That is also why he asked Ms. Jurlando to stop making appointments for him, specifically stating such efforts were "going to be a waste of time."

Michael Saltisiak testified by deposition that he oversees applications for employment at the store. He is responsible for conducting initial interviews of potential employees. He indicated that Lowe's had a job opening in plumbing and that claimant had been scheduled for two initial appointments but did not show up for the appointments. Claimant eventually arrived at an unscheduled time. Claimant introduced himself and apologized for missing the other meetings. Claimant explained that he was "disabled" and would not be able to perform any job Lowe's had available. Mr. Saltisiak told claimant Lowe's had positions available that he thought claimant could perform. He testified that claimant showed no interest in pursuing those positions.

On September 5, 2013, employer filed an application for termination and/or suspension of lost wage benefits, alleging that claimant failed to cooperate with reasonable vocational rehabilitation efforts.

After conducting a hearing, the deputy commissioner found claimant unjustifiably refused to cooperate with vocational rehabilitation efforts. The deputy commissioner observed that claimant "did not present any credible medical evidence that he was unable to work . . . at Lowe's in a modified position . . . ." In granting employer's application to suspend temporary disability benefits, the deputy commissioner wrote, "It is the commission's opinion . . . that the claimant essentially substituted his opinion for the physicians in this case and unilaterally stopped working with the vocational case manager, without even trying to meet with [Lowe's] at one of the scheduled meetings."

Regarding the March 6, 2013 fall, the deputy commissioner, relying on Immer v. Brosnahan, 207 Va. 720, 152 S.E.2d 254 (1967), concluded that any injuries claimant suffered in

the fall were compensable consequences of the original injury, and therefore, awarded claimant medical benefits related to the fall.

Both claimant and employer sought review by the full Commission. The Commission affirmed the deputy commissioner's finding that claimant unjustifiably had refused vocational rehabilitation. As a result, the Commission affirmed the deputy commissioner's suspension of claimant's wage benefits.

A divided Commission, applying the rule from the Commission's decision in Mullins v. Abingdon Wholesale Plumbing & Electric, VWC File No. 186-70-45 (July 22, 1999), reversed the deputy commissioner's finding that claimant's fall was a compensable consequence of his original injury.[2] Specifically, a majority of the Commission concluded that the rule of Mullins ("'[A]n employee is not enroute [sic] [to a doctor's appointment] for purposes of [an injury being a compensable consequence] until he is travelling on the public highways.'") precluded any injuries claimant suffered in the March 6, 2013 fall from being a compensable consequence of the August 18, 2011 injury. Accordingly, the Commission reversed the deputy commissioner's decision and denied claimant's claim for medical benefits related to the March 6, 2013 fall.

Claimant timely noted an appeal to this Court.

ANALYSIS

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most

---

[2] On the issue of compensable consequences, each commissioner issued an opinion. Although they explained the details differently, two commissioners agreed that Mullins stood for the proposition that "'an employee is not enroute [sic] [to a doctor's appointment] for purposes of [an injury being a compensable consequence] until he is travelling on the public highways. . . ,'" and therefore, the injuries suffered in the fall could not be a compensable consequence of the original injury. The third commissioner dissented, finding that Mullins was incorrectly decided and that any injuries suffered in the fall constituted a compensable consequence of the initial injury.

favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005) (*en banc*). Furthermore, "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." Id. at 83-84, 608 S.E.2d at 517 (quoting Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988)). See also Code § 65.2-706. Such deference to the Commission does not extend to questions of law, which we review d*e novo*. Rusty's Welding Service, Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999) (*en banc*) (citation omitted).

Unjustified Refusal to Participate in Vocational Rehabilitation

After an award of benefits, an employer owes a duty to an injured employee to provide "reasonable and necessary vocational rehabilitation services." Code § 65.2-603(A)(3). Such services "include vocational evaluation, counseling, job coaching, job development, job placement, on-the-job training, education, and retraining." Id. Once an employer provides such services, an unjustified refusal of the employee to accept the services "shall bar the employee from further compensation until such refusal ceases . . . ." Code § 65.2-603(B). See also Newport News Shipbuilding & Dry Dock Co. v. Lawrence, 38 Va. App. 656, 662, 568 S.E.2d 374, 376 (2002) (holding that "an employee's unjustified refusal to cooperate with placement efforts of the employer is tantamount to an unjustified refusal of selective employment" (internal quotation marks and citation omitted)). Whether the employee unjustifiably has refused to cooperate with vocational rehabilitation services is a question of fact to be determined from the totality of the evidence. Id. at 662, 568 S.E.2d at 377; UPS v. Godwin, 14 Va. App. 764, 767, 418 S.E.2d 910, 912 (1992). Accordingly, the Commission's finding that claimant unjustifiably refused to cooperate with vocational rehabilitation is conclusive and binding upon us if credible

- 6 -

evidence exists in the record to support the finding. Lawrence, 38 Va. App. at 662, 568 S.E.2d at 377. Evidence to the contrary in the record "is of no consequence if there is credible evidence to support the Commission's findings." Russell Loungewear v. Gray, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986).

Although claimant maintains that his work accident left him unable to perform any job, there is evidence in the record to the contrary. Dr. Zaslav, while concluding that claimant could not return to his pre-injury work, clearly contemplated that claimant could work, going so far as to express his hope that the workers' compensation process would result in "job training" so claimant could "find . . . a new job." The evidence established that the employer procured job interviews for claimant for positions within his medical restrictions and that claimant refused to attend the interviews. Evidence below supports a conclusion that claimant instructed employer's vocational rehabilitation specialist not to schedule further interviews for him and that he characterized such efforts as a "waste of time." Thus, there is evidence in the record to support the Commission's determination that claimant unjustifiably refused vocational rehabilitation services. Accordingly, we affirm this portion of the Commission's decision.

<u>Doctrine of Compensable Consequences</u>

The doctrine of compensable consequences allows a claimant to recover for injuries that result from an industrial accident even if those injuries do not manifest during the initial industrial accident, but rather, develop at some point in the future. Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 751, 601 S.E.2d 693, 697 (2004). Citing to Professor Larson's treatise on workers' compensation, we previously have summarized the doctrine, noting that

> "'[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.'" Morris v. Badger

> Powhatan/Figgie, Int'l., Inc., 3 Va. App. 276, 283, 348 S.E.2d 876,
> 879 (1986) (quoting A. Larson, The Law of Workmen's
> Compensation §§ 13 and 81.30).

Haftsavar v. All American Carpet & Rugs, 59 Va. App. 593, 599-600, 721 S.E.2d 804, 808 (2012).  When the doctrine applies, "'the second injury is treated as if it occurred in the course of and arising out of the employee's employment.'"  Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 23, 622 S.E.2d 233, 237 (2005) (quoting Leonard v. Arnold, 218 Va. 210, 214, 237 S.E.2d 97, 100 (1977)).

The Virginia Supreme Court "first addressed the compensable consequences idea in Immer and Co. v. Brosnahan, 207 Va. 720, 152 S.E.2d 254 (1967)."  Amoco Foam Products Co. v. Johnson, 257 Va. 29, 32, 510 S.E.2d 443, 444 (1999).  In Immer, the claimant was injured when he passed out and then struck a tree while driving to a doctor's appointment where he was to receive treatment for injuries he had suffered in a compensable industrial accident.  207 Va. at 721, 152 S.E.2d at 255.  The Supreme Court found that the injuries suffered in the automobile accident were compensable, concluding that claimant's travel to his authorized physician for treatment was a duty he was "obligated to perform," and therefore, "[t]he hazards of highway travel became necessary incidents of his employment.  When those hazards united with his preexisting vascular condition to cause the accident, there was established a causal connection between his employment and his additional injuries, and he was entitled to compensation."  Id. at 728, 152 S.E.2d at 259.

In reaching this conclusion, the Supreme Court relied heavily on Professor Larson's treatise on workers' compensation.  In adopting the doctrine of compensable consequences as it relates to injuries sustained during travel to the authorized treating physician, the Supreme Court quoted the treatise at length, noting that

Professor Larson, in his comprehensive and illuminating treatise on Workmen's Compensation Law, 1964 Ed., Vol. 1, § 13.13, p. 192.77, states:

> "When an employee suffers additional injuries because of an accident in the course of a journey to a doctor's office occasioned by a compensable injury, the additional injuries are generally held compensable. If the journey takes place immediately after the first injury occurs, the chain of causation is most readily visible, as when an employee was being rushed to a hospital following a compensable injury and sustained further injury when the ambulance was involved in a collision. But, quite apart from the element of immediacy, *a fall or* automobile accident *during a trip to a doctor's office has usually been considered sufficiently causally related to the employment by the mere fact that a work-connected injury was the cause of the journey*, without any necessity for showing that the first injury in some way contributed to the *fall or* accident . . . ."

Id. at 722-23, 152 S.E.2d at 256 (emphasis added). Thus, although the Immer Court focused on the highway risks associated with the automobile accident that caused the second injury in that case, it stated a broader rule. Specifically, the Supreme Court expressly recognized that both automobile accidents and *falls* while travelling to seek authorized treatment for injuries suffered in an industrial accident could result in injuries that constituted compensable consequences.[3]

In the years since Immer, the Commission has been called upon to apply its holding on multiple occasions. In 1999, the Commission decided Mullins. Focusing on the portion of Immer that detailed the "hazards of highway travel" and on cases decided under the "going and coming rule," the Commission found that, under Immer, "an employee is not enroute [sic] [to a doctor's appointment] for purposes of [an injury being a compensable consequence] until he is

---

[3] It is hard to imagine one falling while travelling in an automobile on a public highway. Thus, by including "fall" in addition to "automobile accident," the doctrine described by the Immer Court is broader than just automobile accidents.

- 9 -

travelling on the public highways." The Commission's opinion in <u>Mullins</u> makes no reference to the portion of the <u>Immer</u> opinion that provides that injuries suffered in a fall while travelling to a doctor's appointment can be a compensable consequence.[4]

Turning to the instant case, a majority of the Commission faithfully applied Commission precedent to the facts and determined that, under the rule the Commission announced in <u>Mullins</u>, claimant could not recover for injuries suffered in the March 6, 2013 fall. If <u>Mullins</u> correctly had applied the rule and reasoning of <u>Immer</u>, this unquestionably would be the correct result; however, we find that the Commission's decision in <u>Mullins</u> was in error.[5]

Given that <u>Immer</u> itself expressly recognizes that injuries occasioned by both falls *and* automobile accidents while travelling to an authorized treating physician can be compensable consequences, the Commission erred in <u>Mullins</u> in adopting a blanket rule that requires the claimant to have entered his vehicle.[6] Because the Commission resolved this case by applying

---

[4] We note that, although they are often persuasive, "decisions [of the Commission] are not binding authority on this Court . . . ." <u>UPS v. Prince</u>, 63 Va. App. 702, 708 n.2, 762 S.E.2d 800, 803 n.2 (2014).

[5] Although the Supreme Court's reference to falls during travel to a doctor's office is arguably *dicta* given the particular facts of <u>Immer</u>, the Supreme Court chose to include the language regarding falls. Accordingly, we adopt it here.

[6] The Commission's desire to create a bright-line rule is understandable. Doing so provides clarity to the public and the bar, allowing them to predict whether pursuing a claim will be a fruitful exercise. The language of <u>Immer</u>, however, precludes the line from being drawn where the Commission drew it. The result is that the determination of whether a second injury is a "natural consequence" that flowed from the initial injury by accident will be a fact-specific question, the resolution of which will often turn on whether a particular causal chain simply is "too remote." We recognize that this can be a subjective exercise. For example, in <u>Amoco Foam Products</u>, the Supreme Court found the causal chain too remote for an injury that was caused by an injury that, was itself, a compensable consequence of the injury suffered in the industrial accident. 257 Va. at 33, 510 S.E.2d at 445.

the Mullins rule, it committed error, and therefore, we reverse the Commission's decision regarding compensable consequences in this case.[7]

Our conclusion that the Commission's application of the Mullins rule was error does not inexorably lead to the conclusion that the injuries claimant claims to have suffered in the March 6, 2013 fall represent a compensable consequence of the initial industrial accident. Rather, it requires that the claim be reviewed under the appropriate legal standard.

We have recited that standard many times. An injury will be considered a compensable consequence if it can be said to be a "natural consequence that flows from the [initial, compensable] injury . . . unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." Farmington Country Club, 47 Va. App. at 22-23, 622 S.E.2d at 237 (internal quotation marks and citations omitted); Haftsavar, 59 Va. App. at 599-600, 721 S.E.2d at 808 (same); Imperial Trash Serv. v. Dotson, 18 Va. App. 600, 606-07, 445 S.E.2d 716, 720 (1994) (same); Morris, 3 Va. App. at 283, 348 S.E.2d at 879 (same). See also 1 Lex K. Larson, Larson's Workers' Compensation Law § 10.01 (Matthew Bender, rev. ed. 2015) ("But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of 'direct and natural results,' and of claimant's own conduct as an independent intervening cause."). Finally, for situations like this, the fall and resultant injuries must have occurred "during a trip to a doctor's office," Immer, 207 Va. at 723, 152

---

[7] This is not to say that all injuries suffered in a fall on the day of a doctor's appointment constitute compensable consequences. The injuries still must occur during travel to a doctor's appointment. We simply recognize that travel can begin and, in some circumstances, even end without facing the "hazards of the highway," and therefore, the Commission erred in concluding that there never could be such travel without entering a vehicle.

- 11 -

S.E.2d at 256, as opposed to during everyday activities that are independent of or merely preparatory to the journey.

As noted above, this is a fact-specific inquiry. For example, in this case, it is germane to the inquiry whether claimant actually had a doctor's appointment when he began his trip or whether it had been cancelled before the journey began. It will be necessary to determine whether a claimant was actually on his way to a doctor's appointment as opposed to somewhere else when a fall occurred. Moreover, the question of whether a fall was caused by the need to travel to the doctor's appointment or would have occurred absent any such trip will need to be answered.[8] Without the answers to such questions of fact, we cannot conclude whether a particular injury is rightfully considered a compensable consequence of the industrial accident.

In this case, the Commission sat as fact-finder. Code § 65.2-706 (the findings of the full Commission on review, "as provided in § 65.2-705, shall be conclusive and binding as to all questions of fact"). Given that the Commission applied the rule of Mullins, it determined only that claimant had not entered his vehicle at the time of the fall. It did not make further factual findings because they were unnecessary under Mullins. Because we find that such facts are necessary to make a determination under the appropriate standard, we remand to the Commission to make such factual determinations and to consider whether the injuries claimant alleges to have suffered as a result of the March 6, 2013 fall, were compensable consequences of his August 18, 2011 industrial accident.

Affirmed in part,<br>
reversed in part,<br>
and remanded.

---

[8] We do not suggest that these are the only relevant questions in this or other cases in which the issue of compensable consequences is to be decided.

- 12 -