COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Russell
Argued by videoconference

THOMAS C. DROSE

MEMORANDUM OPINION* BY
v.      Record No. 0591-21-4                   JUDGE WESLEY G. RUSSELL, JR.
                                               DECEMBER 21, 2021

J. E. RICHARDS ELECTRICAL COMPANY AND
  OLD REPUBLIC INS. CO.

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Jamie L. Karek (David L. Bayne, Jr.; Ashcraft & Gerel, LLP, on
        brief), for appellant.

        Timothy D. Watson (Midkiff, Muncie & Ross, P.C., on brief), for
        appellees.


        Thomas C. Drose suffered a compensable injury to his mid and low back while working

for J. E. Richards Electrical Company (employer).[1]  After a period of medical treatment and light

duty work, Drose sought a change in his authorized treating physician and a determination that

he suffered from temporary total disability.  The Commission rejected Drose's request for a

change in physician and his claim that he suffered temporary total disability.  Drose argues that

the Commission erred on both issues.  For the reasons that follow, we affirm the judgment of the

Commission.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Employer's insurance carrier, Old Republic Ins. Co., is also a party to this appeal.  We
refer to them collectively as "employer."

BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, [we view] the evidence and all reasonable inferences that may be drawn from that evidence . . . in the light most favorable to the party prevailing below." Anderson v. Anderson, 65 Va. App. 354, 361 (2015) (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005) (*en banc*)).

Drose, a resident of Maryland, injured his back on July 16, 2018, while he was working as a pipe installer for employer. Two days later, he sought treatment from OT Family Medicine in Dunkirk, Maryland. He was released to work, limited only by "[d]uties as tolerated," and continued to treat with OT Family Medicine.

As a result of a follow-up appointment with OT Family Medicine, MRI imaging was ordered and the results showed "right posterolateral disc herniation at T10-11 indenting the right ventral margin of the spinal cord and desiccation of the L5-S1 disc without disc space narrowing, bulging, or herniation." The practice advised that the imaging results were "consistent with reported injury at work." Nonetheless, after a September 12 appointment, Drose was deemed "able to return to work/school on September 14, 2018." This status was affirmed by OT Family Medicine on September 26 and October 31, 2018.

In addition to treating with OT Family Medicine in the fall of 2018, Drose sought treatment for his injury with Dr. Michael A. Franchetti and Dr. Timothy S. Yoon of Premier Orthopedics in Laurel, Maryland. After a September 14, 2018 evaluation, Dr. Franchetti concluded that Drose "may return to light duty status" with restrictions on repetitive bending or twisting and lifting over twenty pounds. Upon his October 25 follow-up with Dr. Yoon, Drose was released to light duty with no specific restrictions. Nerve blockers and injections were ordered. During this time, Drose was participating in physical therapy.

On January 3, 2019, Drose returned to Dr. Yoon, who again cleared him to light duty and reimposed the bending, twisting, and weight restrictions. Drose was given the same status after a return appointment a month later.

On April 5, 2019, based on a referral from Premier Orthopedics, Drose first visited Dr. Ira Garonzik, a neurosurgeon located in Baltimore. Dr. Garonzik noted that a previous "MRI of the lumbar and thoracic spine . . . shows left greater right foraminal narrowing at L4-5 as well as moderate stenosis right greater than left at T10-11." An examination revealed that Drose "has full strength in his bilateral upper and lower extremities and normal reflexes . . . ." The doctor's report further noted that Drose suffered "[n]umbness and tingling" but no "trouble walking" or with "balance" or "weakness." Surgery was discussed, but Dr. Garonzik preferred an EMG and other testing first. Drose was returned to work that day.

From June 2019 through early December 2019, Drose continued receiving treatment from a combination of Dr. Garonzik, Premier Orthopedics, and OT Family Medicine. All of the providers limited him to light duty work with varying restrictions; none of them determined he was totally disabled during this time period.

On December 27, 2019, Drose again saw Dr. Garonzik. Dr. Garonzik noted that Drose "is working light duty which aggravates his symptoms significantly [and] rates his pain as 10+ 10." Dr. Garonzik provided Drose a note stating that he "will not return to work from: Dec[ember] 27, 2019 thru March 13, 2020[,]" when his condition would be reassessed. Drose did not return to work.

From the time of the accident until 2020, Drose was pursuing his workers' compensation claim in Maryland. In January 2020, Drose, while represented by counsel, agreed that the claim would proceed in Virginia. On January 23, 2020, Drose filed his claim for benefits with the Commission seeking an award for temporary total disability benefits and medical benefits.

Having filed his claim in Virginia, Drose returned to Dr. Garonzik on February 25, 2020. Dr. Garonzik reported that Drose "rates his pain as 10/10 [and] complains of muscle weakness[, but] feels being out of work has helped his pain some." The doctor again linked the symptoms to the work injury and recommended repeat injections "for further therapeutic benefit" while hoping to avoid surgical intervention. Dr. Garonzik indicated that Drose should not return to work until April 21, 2020, when he would be reevaluated.

In March 2020, employer refused to continue paying for treatments by Dr. Garonzik. Consistent with its obligations under the Virginia Workers' Compensation Act, employer provided Drose with a panel of three physicians. From the list, Drose selected Dr. Jae Y. Lim, a neurosurgeon in Fairfax, Virginia, as his authorized treating physician.

Drose began treatment with Dr. Lim on April 9, 2020. Dr. Lim reported,

> Since his injury he has had progressively worsening back pain. . . . His pain is a constant 8/10. Aggravating factors include driving, motions such as bending/lifting/twisting, and damp weather. Alleviating measures include avoidance of lifting, massage, and abstaining from work. He has been out of work since 12/27/2019. Despite extensive conservative measures his symptoms continue to be severe.

Dr. Lim referred Drose to Dr. Robert Wagner for pain management, to include additional injections, but Dr. Wagner was unable to provide services, so Drose was then referred to Dr. Mayo Friedlis in McLean, Virginia for pain management. Drose received an epidural steroid injection from Dr. Friedlis on June 2, 2020. Drose missed two subsequent appointments with Dr. Friedlis, causing Dr. Friedlis to terminate the relationship.

Drose returned to Dr. Lim on September 3, 2020, after obtaining new radiology studies of his thoracic and lumbar spine. Dr. Lim reported that Drose "has a significant HNP at . . . T10-11 but it is unclear how symptomatic he is from this despite the cord compression" and noted that his "low back pain may be at least in part attributable to the focal DDD at L5-S1." The doctor

- 4 -

recounted Drose's previous conservative treatments of physical therapy, massage, medications like oral steroids and opioids, and various injections. He also relayed that, "[s]ince his last visit, [Drose] underwent 1 ESI with Dr Friedlis which exacerbated his pain[, and] he has since been discharged . . . for missing 2 subsequent appointments." Surgical options were discussed "for the T10-11 disc herniation as this could explain in part some of his leg symptoms and some of the thoracic pain[,]" but Drose "did not appear interested in surgery at this time but agreed to see a new PMR doctor for medical management."

In October 2020, Drose "request[ed] a panel of pain management doctors that are closer to his home" so as to avoid "travel[ing] over 160 miles round trip to attend" appointments. Employer provided a panel of three physicians from which Drose chose Dr. John Dombrowski, a pain management specialist in Washington, D.C.

On October 14, 2020, Drose amended his claim for benefits to add a request to designate Dr. Garonzik as his authorized treating physician. Although the Commission had yet to act on the request, Dr. Garonzik, on November 10, 2020, issued a work note for Drose stating that Drose "will not return to work from: 2/25/20-2/9/21." No office visit or examination report was attached to the work note.

Dr. Dombrowski saw Drose on November 17, 2020. Dr. Dombrowski noted that a recent MRI "demonstrates degenerative disc disease at L5 S1 level" and that Drose "clearly has back pain with extension [and] with rotation . . . ." Dr. Dombrowski concluded that Drose "most likely has a lumbar facet arthropathy." He further noted that Drose "underwent a[n] injection . . . that apparently made things worse" but had "a lumbar facet injection by a neurosurgeon that offer[ed] two weeks of relief." The doctor commented, "It is disappointing that [Drose] did not follow up with further management." Dr. Dombrowski continued, "If a lumbar facet injection is helpful, but short-lived[, he] could be a candidate for radiofrequency ablation or even stem cell

placement[; w]e also discussed surgical techniques . . . [and] the possibility of a trial of spinal cord stimulation." Dr. Dombrowski expressed that, "[f]or many patients who fail physical therapy, medications, injection therapy and who do not want surgery I do find spinal cord stimulation a viable option."

A hearing was held before a deputy commissioner on January 7, 2021, to address Drose's claims both for medical benefits and temporary total disability, continuing from December 27, 2019, and for Dr. Garonzik to be designated as his authorized treating physician. Although employer stipulated that Drose had suffered a compensable injury, employer defended the claims by arguing that he was not disabled to the extent alleged and that he failed to market his remaining work capacity. Employer also asserted that circumstances did not warrant a change in physician. Evidence presented at the hearing included Drose's treatment records and his testimony.

Drose acknowledged that he was working light duty for approximately one year and five months, and then was placed on sedentary duty and continued working until December 2019. Describing his situation, he testified, "The work got too intense. I was having to get up and down off a forklift multiple times throughout the day, and it got to the point where the pain was unbearable from getting up and down off the forklift constantly . . . [and] lift[ing] above my means."

He relayed that he had received treatment, including injections, from Dr. Garonzik in Baltimore for about eight months. He noted that Premier Orthopedics had referred him to Dr. Garonzik, and he affirmed that he was on light duty status when he first saw Dr. Garonzik. When asked why he stopped seeing Dr. Garonzik, Drose responded, "Because the case was moved and everything was denied from that point on." He had begun seeing Dr. Garonzik again using his own funds and explained that he wished to continue with Dr. Garonzik because, in

Drose's view, "[h]e's the only doctor that thus far has come up with any type of treatment plan to move forward to getting me back to work without . . . or with a change in some type of pain so it's tolerable." Drose indicated that he "felt like [he was] making gains with Dr. Garonzik" and that he "felt like we actually had some type of treatment plan, and then all of a sudden, it just stopped though."

Drose confirmed that he had selected Dr. Lim from the panel of physicians he was presented with after filing his claim in Virginia. Drose conceded that Dr. Lim had made MRI, injection, and general pain management referrals on his behalf. When asked whether the treatment he had received from Dr. Dombrowski had been helpful, Drose responded, "We haven't really received much yet, so."

Drose acknowledged that he had asked Drs. Lim, Dombrowski, and Friedlis for a work note, but they refused. Drose asserted that Dr. Garonzik took him off sedentary duty because "he actually wanted time for the injections to work versus sending me right back to work and aggravating it any further." Drose denied going back to Dr. Garonzik to obtain out-of-work notes, but conceded that he had had no visits with him between December 2019 and February 2020 and then not again until November 2020. Drose admitted to having been convicted of a crime involving lying, cheating or stealing.

The deputy commissioner issued a decision on January 13, 2021. After summarizing Drose's testimony and the medical evidence, the deputy commissioner first addressed Drose's request for a change in treating physician.

The deputy commissioner reviewed the conditions set out in Commission precedent that justify a change in a claimant's authorized physician. Despite expressly finding that "[t]hese precise conditions do not exist here[,]" the deputy commissioner granted Drose's request to have Dr. Garonzik made his authorized treating physician. In explaining the decision, the deputy

commissioner relied upon Drose's prior treatment with Dr. Garonzik and the fact that Dr. Garonzik's office was located in the state where Drose resides.[2]

The deputy commissioner also found in Drose's favor on his total disability claim. In making this finding, the deputy commissioner expressly relied upon the conclusion of Dr. Garonzik, noting that he had opined that Drose suffered total disability and that the "total incapacity is due to this accident since December 27, 2019."[3]

Employer sought review by the full Commission. Employer specifically asserted that the deputy commissioner erred in "finding that [Drose] proved he is disabled to the extent alleged[,] . . . that [he] proved his alleged disability is related to the accident[, and] . . . that [he] proved he is entitled to a change in treating physician to Dr. Garonzik."

In an opinion by Commissioner Marshall, a unanimous Commission reversed the deputy commissioner's granting of Drose's request for a change in treating physician and finding that Drose suffered temporary total disability as a result of the accident.

Regarding the request to change his authorized treating physician, the Commission concluded that Drose had failed to "me[e]t his burden of proving circumstances that justify a change in treating physician." The Commission noted that Drose's treatment history with Dr. Garonzik did not change the fact that Drose "subsequently chose Dr. Lim from the employer's panel, and entered into a course of treatment with him" and "thereafter chose Dr. Dombrowski for pain management from another panel." Rejecting the rationale of the deputy commissioner, the Commission concluded that the fact Dr. Garonzik had treated Drose

---

[2] No evidence in the record before the deputy commissioner established that Dr. Garonzik's office was closer to Drose's residence than Dr. Lim's office.

[3] Having concluded that Drose was totally disabled and thus lacked any residual capacity, the deputy commissioner necessarily rejected employer's defense related to Drose's failure to market any residual capacity.

previously was "moot"; the Commission explained that, because Drose had selected "new treating physicians from the employer's panels . . . without seeking further guidance or relief," he was "bound by" that decision absent circumstances that were not present here.

The Commission also addressed the deputy commissioner's comments regarding the fact that Dr. Garonzik's office and Drose's residence are both in Maryland while Dr. Lim's office is in Virginia. The Commission noted that Drose "did not raise the issue of distance from his home as a reason for requesting the change" in authorized treating physician and that "no evidence was offered regarding how long the trip to the provider's offices takes [Drose], or how far each provider's office is from his home." Given that Drose did not testify "that driving to Virginia for treatment was a problem for him" and the lack of evidence to support such a finding, the Commission refused to "assume that it is unreasonable or burdensome for [him] to travel to Virginia for treatment."

Turning to Drose's claim of temporary total disability, the Commission independently "considered and weighed the medical evidence [and found that Drose] failed to meet his burden of proving causally related total disability beginning December 27, 2019 and continuing." The Commission rejected Dr. Garonzik's opinion that Drose was unable to work beginning December 29, 2019, finding that "[t]he basis for Dr. Garonzik's opinion is unknown" because "the November 10, 2020 work slip is unaccompanied by an office visit note or examination findings." The Commission further explained that, prior to the November 10, 2020 work note, Drose had last seen Dr. Garonzik "eight months earlier on February 25, 2020." The Commission reasoned that the gap in treatment and the retroactive nature of Dr. Garonzik's disability finding "cast[] doubt on the reliability of his opinion."

Based on its review of all of the medical evidence, the Commission expressly stated that it "d[id] not find [Dr. Garonzik's] opinion credible." As a result, the Commission found that Drose had failed to establish that he suffered from temporary total disability.

Drose now appeals. He asserts the Commission "erred in finding [that he] did not meet his burden in proving circumstances that justify a change in treating physician" and "erred in not finding [him] temporarily totally disabled."

ANALYSIS

I. Standard of review

On appeal, decisions of the Commission are "presumed to be correct[.]" Humphries v. Newport News Shipbuilding & Dry Dock Co., 183 Va. 466, 476 (1945). As the appealing party, Drose "bears the 'burden of showing' that the Commission committed 'reversible error.'" Jones v. Crothall Laundry, 69 Va. App. 767, 774 (2019) (citing Burke v. Catawba Hosp., 59 Va. App. 828, 838 (2012)).

The decision of the Commission is "conclusive and binding as to all questions of fact[,]" Code § 65.2-706(A), and therefore, we are bound by the Commission's factual findings "if those findings are supported by credible evidence in the record, regardless of whether contrary evidence exists or contrary inferences may be drawn" from the evidence, Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 131 (1999) (*en banc*). We, however, are not similarly bound by the Commission's conclusions of law. See Vital Link, Inc. v. Hope, 69 Va. App. 43, 53 (2018). Accordingly, if an appeal presents either a pure question of law or a mixed question of law and fact, the argument is subject to *de novo* review in an appellate court. See, e.g., Loudoun Cnty. v. Richardson, 298 Va. 528, 532 (2020) (holding that "a pure question of law" is subject to "*de novo*" review); Haftsavar v. All Am. Carpet & Rugs, Inc., 59 Va. App. 593, 599 (2012) (holding that "mixed question[s] of law and fact" are subject to "*de novo*" review). In conducting a *de*

*novo* review, we remain bound by the Commission's underlying factual findings to the extent the findings are supported by the evidence. O'Donoghue v. United Cont'l Holdings, Inc., 70 Va. App. 95, 103 (2019).

## II. Change in treating physician

In his first assignment of error, Drose asserts that the Commission "erred in finding" that he "did not meet his burden in proving circumstances that justify a change in treating physician." He thus presents "a mixed question of law and fact[,]" Yahner v. Fire-X Corp., 70 Va. App. 265, 274 (2019), subject to *de novo* review in this Court, Haftsavar, 59 Va. App. at 599.

Upon sustaining a compensable injury, an injured employee is entitled "to be furnished, free of charge . . , a physician chosen by the injured employee from a panel of at least three physicians selected by the employer and such other necessary medical attention." Code § 65.2-603(A). Having been provided a panel, a claimant then selects a physician from the panel to be his authorized treating physician for medical care related to the claim. The claimant's selection of his authorized treating physician is a significant event because once "an employee enters into a course of treatment with a physician, . . . 'the employee is not at liberty to change therefrom unless referred by said physician, confronted with an emergency, or given permission by the employer and/or its insurer or [the] Commission.'" Food Lion, LLC v. Wright, 53 Va. App. 23, 26 (2008) (second alteration in original) (quoting Goodyear Tire & Rubber Co. v. Pierce, 9 Va. App. 120, 128 (1989)).

When a claimant seeks the Commission's permission to change his authorized treating physician, he "bears the burden of presenting facts to the Commission sufficient to support the change." Yahner, 70 Va. App. at 274. Although not intended as an exhaustive list of valid reasons, we previously have recognized circumstances that might justify a change in authorized physicians to include:

inadequate treatment is being rendered; . . . treatment is needed by a specialist in a particular field and is not being provided; no progress [is] being made in improvement of the employee's health condition without any adequate explanation; conventional modalities of treatment are not being used; [there is] no plan of treatment for long-term disability cases; [or a party fails to] cooperate with discovery proceedings ordered by the Commission.

Apple Constr. Corp. v. Sexton, 44 Va. App. 458, 461 (2004) (quoting Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 675 (1998)).  A claimant's personal preference for a different physician is not such a circumstance.

In this case, there is no dispute that employer complied with its statutory obligation to provide Drose with panels that included neurosurgeons and pain management physicians.  It is undisputed that, from the panels of physicians provided by employer, Drose selected Dr. Lim as his treating neurosurgeon and eventually selected Dr. Dombrowski as his treating pain management physician.[4]  Finally, there is no claim that Drose was referred to Dr. Garonzik by either of his authorized treating physicians or that he seeks emergency treatment from Dr. Garonzik.  Accordingly, the question before the Commission and on appeal is whether Drose established a valid reason that required the Commission to allow him to change physicians.

The Commission correctly concluded he did not.  None of the previously recognized circumstances justifying a change in an authorized physician are present.  Both Dr. Lim and Dr. Dombrowski are appropriate specialists for the problems being treated, with Dr. Lim being the same type of specialist, a neurosurgeon, as Dr. Garonzik.  The record amply supports the Commission's factual findings that both Dr. Lim and Dr. Dombrowski had provided Drose with appropriate treatment plans and that "no evidence" established "that the treatment offered by Dr. Lim and Dr. Dombrowski was inadequate or ineffective."  Similarly, no evidence suggested

_____

[4] As noted above, Drose saw Dr. Friedlis for pain management before selecting Dr. Dombrowski from the panel of physicians provided by employer.  Drose came under the care of Dr. Friedlis based on a referral from Dr. Lim, Drose's authorized treating physician.

that the treatment modalities suggested by Dr. Lim and Dr. Dombrowski were unusual or unconventional.

Furthermore, the Commission correctly rejected the deputy commissioner's view that a change in physician was justified by the fact that Dr. Lim was located in Virginia and Drose lives in Maryland. Drose did not claim that distance justified a change and, as the Commission observed, nothing in the record suggested that Dr. Lim's office was further away from Drose's home than Dr. Garonzik's office or that it was more difficult for Drose to drive to Dr. Lim's office.[5] Because Drose bears the burden of establishing circumstances sufficient to justify a change in physician, the lack of any such evidence removes distance and travel difficulty as a possible justification.[6]

Finally, the Commission correctly concluded that Drose's prior treatment with Dr. Garonzik did not justify a change in treating physician in this case. Shortly after Drose filed his Virginia workers' compensation claim, employer provided him with a panel of physicians as required by Code § 65.2-603(A), and Drose selected Dr. Lim as his authorized treating physician. Under the statutory scheme, that selection by Drose limited him to treatment by Dr. Lim unless one of the exceptions detailed above applied. Given that no such exception applied with respect to Dr. Garonzik, the Commission correctly concluded that Drose's prior

---

[5] In contrast, Drose did seek a change in his pain management specialist on the grounds of the distance he needed to travel, and employer agreed to the change, offering Drose a panel of pain management specialists from which he chose Dr. Dombrowski.

[6] Although there was no evidence before the Commission regarding the distance of the respective medical offices from Drose's home, Drose conceded on brief that, from his home, "the distances to Baltimore, Maryland [where Dr. Garonzik is located] and Reston, Virginia [where Dr. Lim is located] are the same[.]" Even if Dr. Garonzik's office were somewhat closer to Drose's home, that fact would not, without more, justify a change in physician because a "claim that the closest doctor is the best doctor falls far short of qualifying as an axiom of law." Sexton, 44 Va. App. at 462.

treatment with Dr. Garonzik was largely immaterial to the authorized treating physician question going forward.

Ultimately, the record supports the conclusion that Drose seeks to change physicians because he prefers Dr. Garonzik to Dr. Lim. It does not matter whether that preference stems from Drose's perception of the doctors' respective bedside manners, his personal belief regarding the efficacy of the respective treatment plans, or the fact that Dr. Garonzik is the only physician willing to opine that Drose suffers from temporary total disability.[7] A claimant's personal preference is insufficient to justify departing from the statutory scheme to allow a change in physician. Accordingly, the Commission did not err in rejecting Drose's request to change his authorized treating physician.

## III. Temporary total disability

"A party seeking workers' compensation bears the burden of proving his disability and the periods of that disability." Hope, 69 Va. App. at 64. Whether a claimant has established that he suffers from a disability is a question of fact. See Marshall Erdman & Assocs., Inc. v. Loehr, 24 Va. App. 670, 679 (1997). Thus, "[u]nless we can say as a matter of law that the evidence submitted by claimant sustained his burden of proof, the [C]ommission's determination [that a claimant does not suffer temporary total disability] is binding upon this Court." Donovan v. United Parcel Serv., Inc., 63 Va. App. 438, 445 (2014).

Such deference extends to "the [C]ommission's assessment of the 'probative weight to be accorded [medical] evidence[.]'" Id. (second alteration in original) (quoting Georgia-Pac. Corp.

---

[7] If the Commission had concluded, as a matter of fact, that Dr. Garonzik's plan would provide a better outcome for Drose than Dr. Lim's treatment plan, that conclusion might have justified a change in physician. See Briggs, 28 Va. App. at 675 (recognizing that a change in physician can be justified if the new physician's "suggested care would be more appropriate and productive"). Here, however, the Commission made no such factual finding, and the record does not compel such a finding.

- 14 -

v. Robinson, 32 Va. App. 1, 5 (2000)).  We "do[] not retry the facts, reweigh . . . the evidence, or make [our] own determination of the credibility of the witnesses."  Paramont Coal Co. Va., LLC v. McCoy, 69 Va. App. 343, 350 (2018) (ellipsis in original) (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991)).  "Evidence to the contrary in the record 'is of no consequence if there is credible evidence to support the Commission's findings.'"  Anderson, 65 Va. App. at 362 (quoting Russell Loungewear v. Gray, 2 Va. App. 90, 95 (1986)).

In attempting to establish that he suffered from temporary total disability, Drose relied heavily on the conclusion of Dr. Garonzik, which was placed before the Commission by way of the November 10, 2020 work note.  The Commission found the note unpersuasive and "d[id] not find [Dr. Garonzik's] opinion credible."  The Commission noted that the November 10, 2020 work note essentially was a naked opinion, "unaccompanied by an office visit note or examination findings."  The Commission's skepticism was further fueled by the "retroactive" nature of the out-of-work note, which held Drose out of work for lengthy, past periods of time during which Dr. Garonzik had neither seen nor examined Drose.  Dr. Garonzik's opinion was further called into question by the fact that Drose asked Drs. Lim, Dombrowski, and Friedlis for similar out-of-work notes, but they refused.  Given the totality of the evidence and the deference we owe the Commission as factfinder, we cannot say that the Commission erred in finding that Drose failed to prove he suffered from temporary total disability.  Accordingly, we affirm the judgment of the Commission.

CONCLUSION

For the reasons stated above, the Commission did not err in denying Drose's request to change his treating physician and did not err in finding he failed to prove he suffered from temporary total disability.  Accordingly, the judgment of the Commission is affirmed.

Affirmed.