COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges O'Brien and Causey
Argued at Lexington, Virginia


HEALTHSOUTH CORP., ET AL.

                                           MEMORANDUM OPINION* BY
v.       Record No. 2058-23-3            JUDGE MARY GRACE O'BRIEN
                                            SEPTEMBER 3, 2024

PAMELA B. HAWTHORNE


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Sarah M. Burton (Tarpine, Heller & Pendergrass, LLC, on brief), for
appellants.

No brief or argument for appellee.


The Virginia Workers' Compensation Commission awarded Pamela B. Hawthorne

medical benefits for a foot injury incurred on November 6, 2022, finding that it arose from a

work-related injury suffered on June 6, 2011.  HealthSouth argues that the Commission erred by

determining that Hawthorne proved that the 2022 injury was a compensable consequence of the

2011 injury.  Because we conclude that the Commission erred in finding a causal connection

between the 2011 work-related injury and the 2022 injury, we reverse the Commission's decision.

BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence and

all reasonable inferences that may be drawn from that evidence are viewed in the light most

favorable to the party prevailing below." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015)

(quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (en banc)).

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

On June 6, 2011, Hawthorne was employed by HealthSouth when she caught her foot on the carpet in an office and sustained a compensable injury to her right foot.[1] Hawthorne fractured the fifth metatarsal bone of her right foot in the incident. Her treatment included a walking boot and a bone stimulator. She missed no work and was discharged from care with no restrictions after six months of treatment. There is no indication that Hawthorne had any lasting disability from the 2011 injury; Hawthorne stated that, at worst, "[e]very now and then it would hurt a little, but nothing major," and that her foot "seemed to be okay."

On November 6, 2022, Hawthorne was "walking out [her] side door" when "[a]s soon as [she] went . . . [to] the first step, [she] felt a snap in that [right] foot." She was carrying a "little kitchen trash bag." Hawthorne testified that she went to Augusta Health Urgent Care where she "told them that [she] had injured that foot before," that "[i]t was the Jones fracture -- the fifth metatarsal," and that she "broke it again in the same spot." The treating physician was not the doctor who treated her in 2011. Hawthorne further testified that her treating physicians did not have copies of her medical records from 2011.

The medical records provided by both parties confirmed that Hawthorne was seen at urgent care on November 6, 2022. There she reported that "she was going down the steps and felt something snap in the [right] foot" approximately two hours earlier and that she was "unable to bear weight on the [right] foot." The November 6 medical record listed multiple health conditions but did not document a previous injury to her right foot. An x-ray showed a closed fracture of the fifth metatarsal bone of Hawthorne's right foot. She was placed in a splint, advised to use crutches to avoid weightbearing, and referred to an orthopedic surgeon.

---

[1] While a claims transaction report from the 2011 incident indicated that Hawthorne fractured her right ankle, HealthSouth acknowledged on brief and at oral argument that she in fact sustained a fracture of the fifth metatarsal bone of her right foot.

Hawthorne was first seen on November 7, 2022, at Shenandoah Valley Orthopedics and Sports Medicine ("Shenandoah Valley Orthopedics"). Her self-reported medical history included "breaking the same bone several years earlier" which took "[six] months to heal[,] but she was weightbearing the entire time."

Hawthorne was seen at Shenandoah Valley Orthopedics six times between November 2022 and March 2023. A record from a December 6, 2022 visit reflects that Hawthorne "mention[ed] she had the same [fracture] in 2011 and [it] took [six] months to heal, that it was workers comp, and she thinks this will be covered by that prior claim but that she had not gotten any confirmation."

A physician's assistant at Shenandoah Valley Orthopedics completed the Commission's attending physician's report on December 8, 2022. He answered "yes" to the question of whether the diagnosed condition was related to an on-the-job injury. Hawthorne's last recorded visit was on March 15, 2023; although advised to return in six weeks, there is no record that she did.

Hawthorne filed a claim for benefits for the 2022 injury, alleging a reinjury to her right foot that was causally related to the 2011 compensable injury. On May 2, 2023, after a hearing, the deputy commissioner ruled that Hawthorne's 2022 injury to her right foot was a compensable consequence of the 2011 injury and awarded Hawthorne lifetime medical benefits. The deputy commissioner relied on Hawthorne's testimony at the hearing, her statements to care providers about the nature of her 2011 injury, and that the 2022 fracture "was in the same location in her foot" as the 2011 injury. Further, he noted that the fracture was marked as an on-the-job injury in the December 8, 2022 attending physician's report from Shenandoah Valley Orthopedics. HealthSouth requested review by the full Commission.

On November 2, 2023, the full Commission affirmed the deputy commissioner's decision in a split opinion. The majority concluded that Hawthorne's 2022 injury was identical to the original 2011 injury and therefore compensable. The dissenting commissioner reasoned that Hawthorne failed to carry her burden of proving that the 2022 injury was causally related to the 2011 incident.

ANALYSIS

HealthSouth argues that the Commission erred by finding that the 2022 injury was a compensable consequence of the 2011 injury because there was no credible medical evidence to support Hawthorne's claim.

"The doctrine of compensable consequences allows a claimant to recover for injuries that result from an industrial accident even if those injuries do not manifest during the initial industrial accident, but rather, develop at some point in the future." *Anderson*, 65 Va. App. at 363. "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." *Farmington Country Club, Inc. v. Marshall*, 47 Va. App. 15, 22 (2005) (quoting *Imperial Trash Serv. v. Dotson*, 18 Va. App. 600, 606-07 (1994)). "The issue in cases involving the range of compensable consequences flowing from the primary injury is essentially one of whether the medical evidence proves a causal connection between the primary injury and the subsequent occurrence." *Williams Indus., Inc. v. Wagoner*, 24 Va. App. 181, 188 (1997).

"Causation is an essential element which must be proven by a claimant in order to receive an award of compensation for an injury . . . ." *AMP, Inc. v. Ruebush*, 10 Va. App. 270, 274 (1990). While a finding of causation "need not be based exclusively on medical evidence, and a claimant is not required to produce a physician's medical opinion in order to establish causation," causation must be still be proved by direct or circumstantial evidence. *Farmington Country Club*, 47

- 4 -

Va. App. at 26. "Causation is usually proven by medical evidence," *Clinch Valley Med. Ctr. v. Hayes*, 34 Va. App. 183, 192 (2000), but the Commission may also consider the testimony of a claimant when "consider[ing] and weighing" the evidence, *Farmington Country Club*, 47 Va. App. at 26.

Because the Commission's determination of causation is a finding of fact, it is "binding and conclusive" on this Court—provided that it is supported by credible evidence. *Id.*; *Anderson*, 65 Va. App. at 361 ("[W]e are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved.'" (second alteration in original) (quoting *Artis*, 45 Va. App. at 83-84)).

We conclude that the Commission erred by finding that Hawthorne carried her burden of proving that the 2022 injury was a compensable consequence of the 2011 injury.

There is no dispute that the 2011 injury was work-related. Hawthorne testified that the treatment for the 2011 fracture lasted only approximately six months, that she missed no work as a result, and that she sought no additional medical attention for her injury. She had no restrictions because of the injury. For almost a decade, she experienced no ongoing issues related to her foot.

None of the medical records from the 2022 injury establish a connection between the two injuries. The records are silent on how Hawthorne's 2011 injury could have caused or contributed to the 2022 injury after eleven years with no subsequent issues or treatment. Indeed, nothing in the medical records indicates that the 2022 care providers even reviewed any records concerning the 2011 injury. In fact, Hawthorne expressly testified that they did not.

At most, the only evidence supporting any connection was the attending physician's report from December 8, 2022, where a physician's assistant merely checked a box that said Hawthorne's 2022 fracture was work-related. The report makes no reference to the 2011 injury and provides no explanation for why the box was checked on the form; it does nothing to establish causation

outside of an unsupported conclusion. Additionally, the physician's assistant did not possess any records from the 2011 injury. The Commission erred by crediting his conclusion as credible medical evidence of causation "when it lacked a sufficient base." *Howell Metal Co. v. Adams*, 35 Va. App. 184, 187 (2001). A conclusion is entitled to no weight when it is made "without relevant and potentially controlling facts." *Smurfit-Stone Container Enters. v. Jones*, No. 0349-14-1, slip op. at 6, 2014 Va. App. LEXIS 338, at *8 (Oct. 7, 2014).

While the Commission may rely on a claimant's testimony under "appropriate circumstances," here, the Commission erred by relying on Hawthorne's non-medical and speculative opinion which was uncorroborated by any medical records. *Dollar Gen. Store v. Cridlin*, 22 Va. App. 171, 177 (1996) (quoting Arthur Larson, *The Law of Workmen's Compensation* § 79.51(a) (1995)). These are not the "appropriate circumstances" contemplated by *Cridlin*. There is also nothing in the record to support an inference that the Commission considered "whether a particular causal chain simply is 'too remote.'" *Anderson*, 65 Va. App. at 366 n.6. Although the injuries were identical, without more, an eleven-year gap between injuries with no supporting evidence to explain is simply too remote.

CONCLUSION

For these reasons, the judgment of the Workers' Compensation Commission is reversed and dismissed.

*Reversed and dismissed.*